**Antonietta DeSANTIS and Marian DeSantis, Appellants**

v.

**The ZONING HEARING BOARD OF THE CITY OF ALIQUIPPA and City of Aliquippa.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 30, 2011.

Decided Sept. 12, 2012.

Antonietta DeSantis and Marian DeSantis, pro se.

Richard F. Start, Sewickley, for appellee City of Aliquippa.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and BROBSON, Judge.

OPINION BY Judge LEAVITT.

Antonietta and Marian DeSantis (Landowners) appeal, *pro se,* the order of the Court of Common Pleas of Beaver County (trial court) granting dimensional variances to the City of Aliquippa for its proposed police department substation. In doing so, the trial court affirmed the decision of the Zoning Hearing Board of the City of Aliquippa (Board) that the substation was a permitted use and that the City would suffer a hardship without a dimensional variance. Landowners raise a number of errors, but we do not reach them because we conclude that the trial court was required to conduct a *de novo* review of the Board's deemed approval of the City's application, and it failed to do so. Accordingly, we vacate and remand.

On July 22, 2010, the City applied for dimensional variances on a lot it has leased in the IT Institutional District of the City.[1]

---

1. The IT Institutional District's stated purpose "is to provide an area for the maintenance, development and expansion of educational and related activities and services for school-

It sought these dimensional variances to construct a police department substation, which is an enclosed trailer that houses a computer. The computer operates a nearby security camera.

The Board held a public hearing on the City's application. Thomas Stoner, City Administrator, testified that the property is owned by the Aliquippa School District. When the School District purchased the property, it included a single family home. Concluding that the house was uninhabitable, the School District demolished it. It then leased the vacant property to the City for $1.00 per month for its proposed substation, so that the City can establish a police presence in the neighborhood. This presence will deter crime, loitering and vandalism in the neighborhood.

Stoner testified that the property measures 35' by 108' and totals 3,780 square feet in size. The proposed substation measures 20' by 8' and has a 50' front yard setback from the main street, a 50' yard setback from the rear, an 8' side yard setback from the east and a 7' side yard setback from the west. Stoner explained that the substation cannot meet the current dimensional zoning requirements. Under the City of Aliquippa Zoning Ordinance, last amended in 2009, buildings in the IT Institutional District are subject to the following standards:

1. Minimum lot area—21,780 square feet.

2. Minimum lot width—75 feet.

3. Minimum yards:

   (a) Front yard—50 feet.

   (b) Side yards—15 feet each side.

   (c) Rear yards—40 feet.

CITY OF ALIQUIPPA ZONING ORDINANCE, Section 1605(A)1–3, Reproduced Record at 49.

Stoner explained that to meet the front, rear and side yard requirements, a building could be no more than five feet wide and 18 feet deep. This makes it impossible to erect a usable structure on the property, rendering the property virtually valueless. Likewise, the property falls well below the minimum lot size of 21,780 square feet. Stoner contended that these dimensional requirements have created a hardship.

On cross-examination by Joseph DeSantis, an objector, Stoner testified that the substation was an administrative office. Stoner also testified that the School District, not the City, demolished the home. Accordingly, the hardship was not of the City's making.

Joseph DeSantis, who lives in a house owned by Landowners, testified against the variance. He stated that the City could eliminate the need for the substation by using wireless cameras. He also argued that the Board had a conflict of interest. The Board's solicitor also served as solicitor for the School District, and one of the Board members was employed by the School District.[2]

---

aged persons in the [School District]." CITY OF ALIQUIPPA ZONING ORDINANCE, Section 1601, Reproduced Record at 49 (R.R.____). Its permitted uses are limited to the following:

1. Administrative offices.
2. Education facilities, including classroom buildings, libraries, and science laboratories.
3. Essential services.
4. Forestry.

5. Interior and exterior recreation facilities, including but not limited to gymnasiums, football stadiums and baseball fields.
ZONING ORDINANCE, Section 1602(A)1–5, R.R. 49.

2. The solicitor responded that the School District was not a party to the action and its economic interest was minimal as the lease was for $1.00 per month. Thus, there was no conflict of interest.

Marian DeSantis, a Landowner, also testified. She claimed that the house on the property at issue had been in good condition when it was torn down by the School District. This conclusion was based on her visual inspection of the outside of the property, not its inside. She also testified that the "substation" was a trailer, the presence of which would adversely affect home values and the character of the neighborhood.

The Board did not render a timely decision. Accordingly, the Board's solicitor issued a deemed approval letter to the City, and Landowners appealed.

The trial court conducted a pretrial conference. Noting that the record lacked agency findings of fact and conclusions of law, the trial court remanded the case to the Board "solely for the purpose of authoring Findings of Fact and Conclusions of Law." Certified Record, Item No. 10, Trial Court Order of February 14, 2011. The Board did so and also issued an order granting the City the dimensional variances it needed to build its proposed substation. The Board found that it was impractical to construct a usable structure on the property within the existing zoning requirements and that the substation was an administrative office, a use permitted in the IT Institutional District. The Board did not address the alleged conflicts of interest of individual Board members or its solicitor; whether the building was a trailer; or whether the building would alter the character of the neighborhood.

The trial court affirmed the Board's decision, explaining that its review was limited to determining whether the Board had abused its discretion or committed an error of law. Without further discussion, the trial court held that the Board's findings were based on substantial evidence; did not violate constitutional law; and conformed to local agency practice and procedure.

Landowners appealed to this Court. In an opinion filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the trial court addressed ten issues raised by Landowners, which included the question of whether the trial court should have conducted a de novo review of the record. The trial court held that its remand order made the record for the trial court's review. Accordingly, the Board's decision could not be disturbed on appeal absent a finding of abuse of discretion or lack of substantial evidence.

On appeal, Landowners raise 14 issues for our review. These issues include: a conflict of interest by two Board members and the solicitor;[3] whether the City met the standard for a dimensional variance; whether the substation constitutes a permitted use; whether the substation is a construction trailer; and whether the installation of a trailer will devalue the neighborhood and alter its essential character. However, we will not address the merits of Landowners' appeal because we conclude that the Board lacked authority to act, effectively, in place of the trial court.

In their appeal, Landowners raised the issue that the trial court was required to conduct a de novo review. Landowners did not address that issue in their brief, but the City did. It argues that it was proper for the trial court to base its determination on the Board's findings of fact and conclusions of law that were rendered

3. At the hearing before the Board, Landowners argued that one Board member had a conflict of interest because he worked for the School District. Before the trial court, Land-

owners argued that a second Board member also worked for the School District and had failed to disclose that fact at the Board hearing.

after Landowners' appeal. Scope and standard of review are not waivable and, thus, it does not matter that Landowners did not brief the issue. *Borough of Jenkintown v. Board of Commissioners of Abington Township*, 858 A.2d 136, 138 (Pa. Cmwlth.2004) (holding that "the issue of standard of review [cannot] be waived"). Stated otherwise, the trial court's decision to conduct an appellate review, instead of a *de novo* review, can and must be reviewed by this Court

How a trial court conducts a review of a deemed land use appeal was the subject of *Gryshuk v. Kolb*, 685 A.2d 629 (Pa. Cmwlth.1996). Therein, the zoning board held a hearing on an application for a variance filed by a sportsmen's club. The board denied the variance orally, within 45 days of the hearing, but did not issue a written decision within the prescribed time period.[4] Rather, the written decision was provided untimely, *i.e.*, more than 90 days from the date of the hearing. The sportsmen's club challenged the board's written decision as untimely and the trial court agreed, finding that the sportsmen's club had a deemed approval. Neighboring landowners then appealed the deemed approval. Ultimately, the trial court granted the appeal and "reversed" the deemed approval. *Id.* at 631.

On appeal to this Court, the sportsmen's club argued that the trial court erred in reviewing the board's decision instead of making its own factual findings. The sportsmen's club argued that because the board's decision was untimely, its late-filed decision was a nullity, thereby requiring the trial court to make its own findings. This Court agreed.

Confronting, for the first time, the scope of a trial court's review of a deemed approval, we concluded that where a board has failed to act in a timely manner, "its very decision has been nullified." *Id.* at 634. We held that "the proper course in reviewing a deemed approval is for the trial court to make its own findings even if there are zoning board findings in the record." *Id.* Accordingly, we remanded the matter to the trial court to act as "the fact-finder when it reviews a deemed zoning board approval." *Id.* at 633.

More recently, in *Nextel Partners, Inc. v. Clarks Summit Borough/Clarks Summit Borough Council*, 958 A.2d 587 (Pa. Cmwlth.2008), we reiterated our holding in *Gryshuk*. In *Nextel* the question before the Court was whether or not a deemed approval had actually occurred. That is not the issue in the instant case. However, in analyzing that issue, we reiterated that "when a deemed approval occurs, a board's findings are nullified and the trial court is required to make its own findings." *Nextel*, 958 A.2d at 596.

We conclude that the trial court erred in conducting appellate, as opposed to *de novo*, review of the Board's deemed approval. When Landowners appealed the deemed approval, the trial court was obligated to make its own findings of fact and conclusions of law. It was error to remand the matter to the Board for that undertaking, and the findings by the Board now contained in the record are a nullity. *Gryshuk*, 685 A.2d at 634.

Accordingly, the trial court's order is vacated and this case is remanded to the

---

4. Section 908(9) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10908(9), requires that the board "render a written decision ... within 45 days after the last hearing before the board or hearing officer." Further, "where the board fails to render the decision within the period required ... the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time." *Id.*

trial court for it to conduct *de novo* review and render its own findings of fact and conclusions of law.[5]

### ORDER

AND NOW, this 12th day of September, 2012, the order of the trial court dated July 7, 2011 is hereby VACATED and REMANDED for further proceedings consistent with this opinion.

Jurisdiction relinquished.

5. Because we remand, we do not reach, and express no opinion as to, the remaining issues raised by Landowners.