**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Jeffrey Maund and Eric Pagac,      :
                Appellants      :
                                    :
           v.                :    No. 206 C.D. 2015
                                    :    Argued: April 12, 2016
Zoning Hearing Board of         :
California Borough                  :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                 **FILED: June 8, 2016**

Appellants Jeffrey Maund and Eric Pagac (the landowners) appeal from an order of the Court of Common Pleas of Washington County (trial court). The trial court sustained preliminary objections filed by the Zoning Hearing Board (ZHB) of California Borough (the Borough) in response to the landowners' amended complaint in mandamus (Complaint). We affirm the trial court's order.

We summarize the procedural history and the pertinent facts as the landowners have pleaded in the Complaint and as set forth in the land use application at issue in this matter. The landowners own a 3.47-acre tract of land in the Borough that is located in an R-1 Single-Family Residential district.[1]

---

[1] In addition to single-family residences, the Borough's Zoning Ordinance (ZO) also permits the following uses as of right in the R-1 Single-Family Residential district: child care **(Footnote continued on next page…)**

(Reproduced Record (R.R.) at 14.) On April 25, 2011, Maund, on behalf of both landowners, submitted an application to the Borough's zoning officer, Daniel Cottrill (Cottrill), which Maund characterized as a request for a variance. (*Id.*) The application was submitted on a form captioned "Zoning Hearing Board of California Borough Notice of Appeal." (R.R. at 204.) The content of that form, as completed by the landowners (with the landowners' filled-in information indicated by italics, including the check marks) is set forth below:

> (I) (We) *Jeffrey Maund & Eric Pagac* . . . request that a determination be made by the Zoning Hearing Board on the following appeal, which was denied by the Zoning Officer on ___ for the reason that it was a matter which in the opinion of the Zoning Officer should properly come before the board.
>
> An interpretation ( ), a special exception (✓), a variance ( ) is requested to Article ___, Section ____, Subsection ____, Paragraph ____ of the Zoning Ordinance for the reason that:
>
> ( ) It is an appeal for an interpretation of the ordinance or map
>
> ( ) It is a special exception to the ordinance on which the Zoning Hearing Board is required to pass
>
> ( ✓) It is a request for a variance relating to the ( ✓) use, ( ) area, ( ) frontage, ( ) yard, ( ) height, or

---

**(continued…)**

centers, family child day care, greenhouses, home occupations, and planned residential developments. (Supplemental Reproduced Record (S.R.R.) at 53b.) The ZO also permits a number of uses in R-1 Single-Family Residential districts as special exceptions. These uses include, *inter alia*, bed-and-breakfast inns, cemeteries, country inns, education[al] institutions, nurseries, and places of worship/religious institutions. (*Id.*) Multi-family dwellings are not permitted in an R-1 Single-Family Residential district as of right or as special exceptions or conditional uses.

_____. (State if request is for purposes other than those enumerated in the provisions of the ordinance)

The description of the property involved in this appeal is as follows: . . . .

Zone District: *R-1* . . . . .

Proposed Use: *R2 – Multi Family Residential*

(I) (We) believe that the Board should approve this request because: (include the grounds for appeal or reasons both with respect to the law and fact for granting the appeal or special exception or variance, and if hardship is claimed, state the specific hardships)

*This is a taxable project, Developers are not requesting any tax abatements. Property adjoins Cal. University property and is located in an area that adjoins property that already allows multi-family housing.*

(*Id.*)

The landowners correctly identified the zoning district in which their property is located—R-1, which, as noted above, does not permit multi-family dwellings. In the area on the form requesting applicants to identify a proposed use, however, the landowners, instead of simply indicating that they wanted a variance to construct a multi-family dwelling, specifically indicated that the use they desired was "R-2 Multi Family Residential." (*Id.*) The landowners also indicated that the area in which the property is located "adjoins property that already allows multi-family housing." (*Id.*)

The ZO includes a distinct district for multi-family dwellings, denominated as "R-2 Multifamily Residential." (Supplemental Reproduced Record (S.R.R.) at 54b.) At the time Maund submitted the application, along with a check, Cottrill advised Maund that "the variance application was wrong" and that

3

"a conditional use application 'had to go before the planning commission.'"[2] (R.R. at 14, ¶10.) In their complaint, the landowners averred that Maund "objected" to Cottrill's insistence that he, Maund, submit a different application, which Cottrill apparently provided, entitled "Conditional Use Application." (R.R. at 14, ¶11.) As averred in the complaint, Maund "informed . . . Cottrill . . . at least three times, that said application was the wrong form, and insisted that it was being submitted over objection[—]that they . . . wanted a variance hearing before the [ZHB]." (*Id*.) Maund requested Cottrill to provide a letter indicating that the request had to be submitted to the planning commission, but Cottrill never provided such letter. (R.R. at 14, ¶12.) The Borough cashed the check on April 29, 2011.

On August 31, 2011, the landowners posted a notice on the property, under the purported authority of Section 908 of the Municipalities Planning Code (MPC),[3] indicating that the variance application had been deemed approved, based

---

[2] Although a conditional use is a type of land development/use that a governing body typically acts upon and does not constitute a zoning change, the form the Borough has adopted, captioned "Conditional Use Application," provides applicants with three types of actions upon which the Borough Council or Planning Commission can act: conditional uses, zoning amendments ("Change of District"), and curative amendments. (S.R.R. at 180b.)

[3] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10908. Section 908(9) of the MPC provides in pertinent part:

> [W]here the [zoning hearing] board fails to commence, conduct or complete the required hearing as provided in subsection (1.2), the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time. When a decision has been rendered in favor of the applicant because of the failure of the board to meet . . . as hereinabove provided, the board shall give public notice of said decision within ten days from the last day it could have met to render a decision . . . . If the board shall fail to provide such notice, the applicant may do so. Nothing in this subsection shall prejudice the

**(Footnote continued on next page…)**

4

upon the failure of the ZHB to conduct a timely hearing. The same day, the landowners sent a letter by certified mail to Cottrill, the ZHB's President, and the Borough's President, advising them that "a decision for a R-2 Multi-Family housing variance has been deemed to have been rendered in favor of [the landowners.]" (R.R. at 27.) On September 2, 2011, the landowners also caused to be published in a newspaper a notice that the application had been deemed approved. In reliance upon the alleged deemed approval, the landowners claimed that the Borough had failed to comply with a duty to designate the property as "Multi-Family use."[4]

The landowners contended that Cottrill's receipt of the application constituted submission of the application to the ZHB. The landowners asserted that receipt of the application by Cottrill and the Borough's negotiation of the

---

**(continued…)**

> right of any party opposing the application to appeal the decision to a court of competent jurisdiction.

[4] On September 27, 2011, approximately two weeks before the landowners filed this mandamus action, the Borough filed a land use appeal, in which it challenged the alleged deemed approval, asserting that the landowners submitted a second application—one seeking an amendment to change the zoning of the property from R-1 to R-2. (*See Borough of California v. Zoning Hearing Bd. of California Borough* (Pa. Cmwlth., No. 622 C.D. 2015, filed June 8, 2016) (*Borough of California*); R.R. at 14.) The "second application" to which the Borough referred appears to be the conditional use application to which the Complaint in this matter refers, as we mentioned above. The Borough contended in the land use appeal that the request for amendment via the conditional use form was deemed denied by operation of law under Section 916.1(f) of the MPC, Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10916.1(f), and that the landowners never filed an appeal of the deemed denial. In the land use appeal, the Borough asserted that no deemed approval of the variance application occurred, arguing that (1) the submission of the conditional use application (for zoning change) constituted a withdrawal of the variance application; and (2) the ZHB had no power to grant the relief as requested in the variance application. (*Borough of California*, R.R. at 15.)

5

check triggered a duty on the part of the ZHB to conduct a hearing on the application. The landowners contended that the MPC required the ZHB to conduct a hearing within sixty days of the receipt of the application. Based upon the failure of the ZHB to conduct a hearing, the landowners asserted that the application was deemed approved by operation of law. The landowners sought an order of the trial court granting their mandamus request and compelling the ZHB to "issue a proper order or decision approving the subject property as Multi-Family."[5] (R.R. at 16.)

The ZHB demurred to the Complaint, arguing, *inter alia*, that the application did not actually seek variance relief, but rather, sought a change in zoning for the property. The ZHB asserted that, because the ZHB has no power to grant a zoning change, mandamus relief was not available to the landowners.

Before deciding whether to sustain the ZHB's preliminary objections, the trial court[6] issued an order, docketed to both the mandamus Complaint (trial court docket No. 2011-7419) and the land use appeal (trial court docket No. 2011-6982). That order: (1) noted that (a) preliminary objections were pending with regard to the mandamus matter and a motion to consolidate the two matters was pending and (b) the trial court heard argument regarding the two matters and concluded that an evidentiary hearing was necessary in order to rule upon the preliminary objections and the consolidation motion; and (2) directed that

[5] The landowners also sought damages for alleged losses arising from "loss of business, profits, and use of proceeds" they claimed to have experienced because they had to delay fulfillment of a sales agreement between the landowners and a developer who planned to construct multi-family residences. (R.R. at 16-7.)

[6] The matter was initially assigned to Washington County Court of Common Pleas Judge Moschetta-Bell.

6

a hearing would be conducted "as to the issue set forth" in both matters, which the trial court described as:

> Whether [the landowners] properly submitted a variance request to Daniel Cottrill, the . . . Borough Zoning Officer, thereby triggering the [ZHB]'s duty to hold a hearing within the statutory period and the legal consequences thereof, including a possible deemed approval?

(Trial court's June 1, 2012 order.) Thus, it appears that the trial court and the parties regarded resolution of the above issue as essential to consideration of both the preliminary objections to the mandamus Complaint and to the Borough's land use appeal of the purported deemed approval.

Following the hearing, the parties submitted briefs regarding the preliminary objections. Judge Moschetta-Bell retired before disposing of the preliminary objections, and the Honorable John F. DiSalle proceeded to issue an order sustaining the preliminary objections, in which he indicated that he based his decision on "the parties' briefs and relevant evidence." The trial court concluded that the variance application actually sought rezoning, and, therefore, the ZHB lacked jurisdiction over the relief the landowners were seeking to obtain through the variance process. Thus the trial court determined that, because the ZHB had no power to effectuate a change in a zoning classification, mandamus was not an available remedy to the landowners.

On appeal, although the landowners raise several issues, we view the issues of whether the trial court erred in sustaining the ZHB's preliminary

7

objection and whether the trial court erred in concluding that the ZHB did not have authority to render a decision on the rezoning application as dispositive.[7]

A trial court may sustain preliminary objections in the nature of a demurrer only where, based upon the facts as pled in a complaint, it is clear that the plaintiff will be unable to prove legally sufficient facts demonstrating the plaintiff's right to relief. *Mazur v. Trinity Area Sch. Dist.*, 961 A.2d 96, 101 (Pa. 2008). In applying this standard, the trial court must accept as true all well-pled facts that are relevant and material and any inferences that may be reasonably deduced from those facts. *Id*. This Court's review of a trial court's order sustaining preliminary objections is plenary, and we apply the same standard of review as the trial court. *Id*.

"[M]andamus is an extraordinary writ which lies to compel the performance of a ministerial act or a mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy." *Valley Forge Racing Ass'n, Inc. v. State Horse Racing Comm'n*, 297 A.2d 823, 825 (Pa. 1972). In the context of an applicant's claim that a ZHB failed to conduct a hearing within the time mandated by Section 908 of the MPC, the only relief that an applicant can obtain in such a mandamus action is a determination of whether a deemed approval occurred. *Gryshuk v. Kolb*, 685 A.2d 629, 631-32 (Pa. Cmwlth. 1996). An applicant may not

---

[7] The other primary issues the landowners raise include whether: (1) the trial court erred in concluding that a conditional use application the landowners purportedly filed was deemed denied; and (2) the trial court erred in its factual findings relative to the preliminary objections by not finding all facts in favor of the landowners. The landowners also assert that the trial court should have permitted them to amend their mandamus complaint. We address this issue briefly below.

8

obtain the land use relief he or she sought in the application, such as the variance requested in this matter. *Id*. As the Court in *Gryshuk* explained:

> If owners were not entitled to mandamus, because there was no deemed approval and instead the Board's denial of Owners' application was effective, then Owners' appeal of that denial would be heard. If mandamus was appropriate, and there was a deemed Board approval, then [the objectors]' appeal of that approval would be heard.

*Id*. at 632. Even if the landowners established a right to a deemed approval, they would likely still have to face a challenge to the deemed approval on the merits. *See DeSantis v. Zoning Hearing Bd. of the City of Aliquippa*, 53 A.3d 959, 962 (Pa. Cmwlth. 2012) (holding that where objector challenges deemed approval on merits, any untimely action by zoning hearing board such as findings of fact are null and void and trial court must conduct hearing de novo and issue findings and conclusions).

In reviewing the preliminary objections, the trial court was required to limit its review to the averments in the Complaint and the attached variance application. The trial court was free to apply the factual averments as well as any reasonable inferences arising from the averments and the information on the landowners' application in reaching a conclusion regarding the landowners' right to a hearing before the ZHB. Here, the trial court concluded that the application was not really one that sought a variance but rather a zoning change. We conclude that the trial court did not err. We note initially that, regardless of the term the landowners used to describe their application, it was not an application for a variance. The application itself confirms this conclusion, because the landowners requested a change to a specific type of district—"R-2 Multi-Family Residential," rather than simply indicating that they wanted to use the property for a

9

multi-family dwelling. The distinction between a specific type of district and a proposed use is material, and it was reasonable for the trial court to interpret the application as a request for a change in zoning rather than an opportunity to demonstrate a right to a variance.

Zoning hearing boards are vested with the power to exercise quasi-judicial authority to determine whether variance relief is warranted. Section 912.1 of the MPC, Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, 53 P.S. §10912.1. The limitations on a zoning hearing board's power to render variance relief are intended to check unfettered exercise of that power, because without such limits zoning hearing boards could ultimately usurp the rightful power and judgment of a governing body in enacting zoning districts. *See Scalise v. Zoning Hearing Bd. of the Borough of West Mifflin*, 756 A.2d 163, 167-68 (Pa. Cmwlth. 2000). In *Scalise*, we explained,

> [t]he modification of a zoning ordinance by the issuance of a variance is itself a form of legislative power. While the ordinance reflects legislation in its most common form—the creation of rules of general application—a variance is a specialized form of legislation, directed at the specific property involved. The courts have long recognized that unlimited use of the variance power would swallow the entire legislative power and therefore have generally refused to permit its use as a substitute for rezoning.

*Id*. (citations omitted).

Zoning hearing boards are empowered to grant use variances only when a property owner can establish, *inter alia*, that an unreasonable hardship exists, preventing the property owner from making reasonable use of his or her property. Section 910.2 of the MPC, Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10910.2. The mere fact that the

10

landowners elected to call their application a request for a variance did not make it so. The trial court reasonably interpreted the application to be a request for a zoning change. As we stated above, zoning hearing boards lack the power to provide such relief, and the ZHB had no authority or duty to conduct hearings on an application that, despite being called a variance request, in no way constituted a request for a variance.

In *Cohen v. Ford*, 339 A.2d 175 (Pa. Cmwlth. 1975), this Court considered whether a developer was entitled to mandamus to compel the defendant township, its governing body, and its planning commission to issue zoning permits for a townhouse development. We rejected the developer's argument that it was entitled to the issuance of zoning permits based upon the planning commission's preliminary approval of the developer's plan as a conditional use. We concluded that the planning commission's purported approval was *ultra vires*, exceeding the planning commission's authority. We determined that the procedures the developer had followed were in conflict with the procedures set forth in the MPC, and we affirmed the trial court's decision in that case, finding that the developer was not entitled to relief in mandamus. *Cohen*, 339 A.2d at 179-80.

Similarly, in this matter, because the granting of a mandamus under the circumstances presented would be *ultra vires* (given the lack of power of a zoning hearing board to rezone property), the landowners have not established a necessary element of their case. Specifically, they have not demonstrated a clear right to the relief they are requesting—the deemed approval and an order from the trial court directing the ZHB to grant the variance application.

We find no merit to the landowners' other claims that (1) Cottrill's receipt of and negotiation of the landowners' check constituted acceptance of the

11

purported variance application; and (2) the trial court erred by dismissing the Complaint with prejudice rather than permitting the landowners to amend the Complaint. With regard to the cashed check, we conclude that such action could not vest the ZHB with the power to grant rezoning. With regard to the landowners' claim that the trial court should have permitted them to file an amended mandamus complaint, we conclude that, based upon the wording in the application, no amendment of the Complaint could alter the reasonable conclusion that the landowners' application sought rezoning—relief which the ZHB lacked authority to grant. Thus, the ZHB's failure to act on the landowners' variance application did not result in a deemed approval.

Based upon the foregoing analysis, we affirm the trial court's order.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Maund and Eric Pagac,       :
               Appellants       :
                                  :
           v.                 :      No. 206 C.D. 2015
                                  :
Zoning Hearing Board of          :
California Borough                :

# **O R D E R**

AND NOW, this 8th day of June, 2016, the order of the Court of Common Pleas of Washington County is AFFIRMED.

 

 

                                               
_____

                                              P. KEVIN BROBSON, Judge