W.J. Menkins Holdings, LLC,　　　　　:
　　　　　　　　Appellant　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
Douglass Township, Berks County　　:
Zoning Hearing Board, Township of　:
Douglass, Dennis Urffer and　　　　:　No. 1020 C.D. 2018
Judith Urffer　　　　　　　　　　:　Argued: April 9, 2019


BEFORE:　HONORABLE RENÉE COHN JUBELIRER, Judge
　　　　　HONORABLE ANNE E. COVEY, Judge (P.)
　　　　　HONORABLE MICHAEL H. WOJCIK, Judge


OPINION BY
JUDGE COVEY　　　　　　　　　　FILED: May 2, 2019


　　　W.J. Menkins Holdings, LLC (Applicant) appeals from the Berks County Common Pleas Court's (trial court) June 28, 2018 order affirming the Douglass Township Zoning Hearing Board's (ZHB) decision granting a variance subject to conditions and denying the other requested relief. Applicant essentially presents one issue for this Court's review: whether the ZHB's conditions were authorized and reasonable.[1] After review, we affirm in part and reverse in part.

　　　Applicant owns the property located at 1269 Reading Avenue, Boyertown, Douglass Township (Township), Berks County, Pennsylvania (Property). Reproduced Record (R.R.) at 7a-9a. The Property is located in the Township's

---

[1] Applicant presents two issues in its Statement of the Questions Involved: (1) whether the ZHB's conditions were authorized and reasonable, and (2) whether the ZHB erred by not applying *Itama Development Associates, L.P. v. Zoning Hearing Board of the Township of Rostraver*, 132 A.3d 1040 (Pa. Cmwlth. 2016), to the facts of this case. *See* Applicant's Br. at 4. Because these issues are subsumed in this Court's analysis of whether the ZHB's conditions were authorized and reasonable, they have been combined and will be addressed herein.

Village Commercial (VC) Zoning District, and consists of approximately one and one-half acres upon which sits a single-family residence and a five-bay garage/office. Applicant purchased the Property from Randy L. and Debra Keen (the Keens), who lived in the residence and operated a family-owned commercial electrical contracting business therefrom in accordance with variances the Township granted in 1986 (to construct the garage and conduct the business at the rear of the Property) and in 1987 (for a garage addition).[2] The ZHB declared in both the 1986 and 1987 orders that any further expansion of the Keens' business would require additional variances. *See* R.R. at 170a, 174a-175a.

Adjoining the Property to the west is B&W, an asphalt and cement plant manufacturing facility that employs heavy equipment, cranes and trucks. *See* ZHB Finding of Fact (FOF) 27; *see also* R.R. at 67a-68a, 182a-189a, 235a-236a. "B&W is a nonconforming use which is an industrial[-]type use[.]" Township Br. App. (ZHB Op.) at 31. B&W shares a common driveway with Applicant pursuant to an easement. *See* FOF 28; *see also* R.R. at 67a, 182a, 235a.

Applicant leased the Property to W.J. Menkins Hauling (Company) to operate a quarry trucking business from the Property. The Company owns 25 tri-axle dump trucks that are used to haul sand and stone from quarries near the Property and as far away as South Jersey, Maryland and Delaware. The Company's employees' activity on the Property consists of entering, removing the dump trucks from their parking spaces, parking their personal vehicles in the dump truck spaces, leaving in the dump trucks to obtain and deliver materials, returning the dump trucks to the Property and departing in their cars.[3] According to Applicant's president William J. Menkins, III (Menkins), this activity begins at 1:00 a.m. and ends at 4:00 p.m. The

---

[2] When the Keens' variances were granted, the Property was part of the Township's Rural Suburban Residential (R-1) Zoning District.

[3] Although the sand and stone materials are not stored on-site, the Company's dump trucks parked at the Property sometimes temporarily contain stone. *See* R.R. at 71a.

2

Company's 22 truck drivers, a dispatcher and a safety officer work from the Property. Menkins uses the office in the garage to operate the Company. The Company washes its dump trucks at the Property, and uses the garage's five bays to store parts and make minor mechanical repairs.

After the Township contacted Applicant about zoning violations, on February 28, 2016, Menkins applied for a zoning permit to change the Property's use from Keen Electric to a "hauling business." R.R. at 207a. On March 23, 2016, the Township's Code Enforcement Officer John Wascavage (Wascavage) denied the zoning permit application because "[a] trucking hauling business is not a permitted use in the [Township's VC] Zoning District (#27-405.2 – Uses Permitted by Right)." R.R. at 205a.

On April 21, 2016, Applicant appealed to the ZHB seeking: (1) review of Wascavage's determination; (2) a variance from Sections 27-405 and 27-904 of the Douglass Township Zoning Ordinance of 2013 (Zoning Ordinance), Zoning Ordinance §§ 27-405, 27-904; (3) the right to use the Property per Applicant's vested rights; (4) the right to use the Property pursuant to the doctrine of equitable estoppel; (5) the right to use the Property under a variance by estoppel; (6) the right to use the Property pursuant to Zoning Ordinance Section 27-902; and (7) the right to expand a nonconforming use. *See* R.R. at 1a-5a. The ZHB conducted hearings on August 22, October 31 and December 13, 2016, and February 27, 2017. *See* R.R. at 63a-168a. The Township and neighboring property owners, Dennis (Mr. Urffer) and Judith Urffer (collectively, the Urffers),[4] Heather Pilla (Pilla)[5] and Theresa Kovach

---

[4] The Urffers reside at 1259 Reading Avenue, which adjoins the Property to the east. *See* R.R. at 65a.

[5] Pilla owns the residential property located at 345 North Sunrise Lane, immediately adjacent to and northwest of the Property. *See* FOF 68; *see also* R.R. at 65a.

(Kovach)[6] intervened and were granted party status. The parties submitted proposed findings of fact, and the ZHB heard oral argument on May 22, 2017.

On June 26, 2017,[7] the ZHB granted Applicant's variance, subject to the following conditions (Conditions):[8]

a) [Applicant's] use is limited to the current size of his operation which [Applicant] stated is a total of 25 trucks. Any further expansion shall require application to this [ZHB] for a variance;

**b) The hours of operation of the trucking/hauling use shall be limited to 6[]AM to 6 PM, Monday through Friday;**

c) There shall be no use of back[-]up alarms or back[-]up beepers on any vehicles at any time when on the [Property];[9]

d) There shall be no storage of any quarry materials on the [Property] at any time;

**e) [Applicant] shall promptly apply for and obtain final land development approval;**

f) [Applicant] shall comply with all other applicable statutes, ordinances, rules and regulations of all governmental authorities having jurisdiction with regard to the use and enjoyment of the [P]roperty; and

---

[6] Kovach resides at 1253 Reading Avenue, on a property adjoining the Urffers' property. *See* FOF 110; *see also* R.R. at 64a.

[7] The ZHB issued its written opinion on August 8, 2017. The ZHB's decision and opinion were timely based on the parties' agreement and formal waivers of otherwise applicable Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202, requirements.

[8] Three of the five ZHB members agreed with the ZHB's decision. The two other ZHB members joined those three members and voted in favor of the ZHB's findings of fact, discussion and conclusions of law, but would have denied Applicant variance relief. *See* Township Br. App. (ZHB Op.) at 37; R.R. at 290a.

[9] During the April 9, 2019 oral argument before this Court, Applicant's counsel withdrew Applicant's challenge to Condition c.

4

g) Within the limitations of the conditions stated herein, the trucking/hauling use shall function and operate as described by [Applicant] in the testimony except where such description contravenes any of these express conditions.

Township Br. App. (ZHB Op.) at 35-36 (emphasis added); R.R. at 289a-290a (emphasis added). Applicant's appeal was denied in all other respects. Applicant and the Urffers appealed to the trial court.[10] On June 28, 2018, the trial court, without taking additional evidence, affirmed the ZHB's decision. Applicant appealed to this Court.[11]

Applicant argues that the ZHB's Condition b limiting its operating hours and Condition e requiring Applicant to obtain final land development approval are unreasonable and/or without authority. Applicant proposes that its appeal from the land development condition be sustained, and that the variance

> should be granted subject only to the condition that [Applicant] be allowed to use the Property without limitation concerning the time of operation[,] as long as:
>
> 1. No back[-]up beepers are use[d] on the Property from 6:00 p.m. to 6:00 a.m.

---

[10] The Urffers appealed on the basis that Applicant failed to meet the requirements for a variance or, in the alternative, that the 6:00 a.m. to 6:00 p.m. limits of Condition b should be 7:00 a.m. to 5:00 p.m. to comply with the Zoning Ordinance provision applicable to similar uses.

[11] Where, as here, the trial court does not take additional evidence, our scope of review is limited to determining whether the [ZHB] committed an error of law or 'a manifest abuse of discretion.' *Valley View Civic Ass[']n v. Zoning B[d.] of Adjustment*, . . . 462 A.2d 637, 639 ([Pa.] 1983). A zoning board abuses its discretion 'only if its findings are not supported by substantial evidence.' *Id.* at 640. Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Id.*

*Pequea Twp. v. Zoning Hearing Bd. of Pequea Twp.*, 180 A.3d 500, 504 n.1 (Pa. Cmwlth. 2018).

Because the Urffers did not timely file a brief with this Court, on January 10, 2019, this Court precluded them from filing a brief and participating in oral argument.

5

2. Trucks would be parked so that they face the driveway and move forward in leaving the Property.

3. No work on any vehicles would take place during the hours of 8:00 p.m. to 6:00 a.m.

Applicant's Br. at 41.

Initially, the law is clear that "a zoning hearing board's authority is defined by the [Pennsylvania Municipalities Planning Code (MPC)], and the zoning ordinance." *HHI Trucking & Supply, Inc. v. Borough Council of Borough of Oakmont*, 990 A.2d 152, 160-61 (Pa. Cmwlth. 2010). Here, the Keens' Property use as the home base for an electrical contracting business was granted by variance.[12] "It is the function of the [ZHB] to determine whether the evidence satisfies the criteria for granting a variance." *Marshall v. City of Phila.*, 97 A.3d 323, 331 (Pa. 2014); *see also* Section 901.2(a) of the MPC.[13] "Alterations in a use granted by variance require further action by the zoning authorities. *Kensington* [*S. Neighborhood Advisory Council v. Zoning Bd. of Adjustment*, 471 A.2d 1317, 1320 (Pa. Cmwlth. 1984)]." *Scalise v. Zoning Hearing Bd. of Borough of W. Mifflin*, 756 A.2d 163, 167 (Pa. Cmwlth. 2000). Thus, in light of the law and the 1986 and 1987 variances, Applicant here properly applied for a new variance.

"A property owner seeking a variance must demonstrate both unnecessary hardship if the variance is denied and that the proposed variance is not

---

[12] This appeal does not involve a nonconforming use, as Applicant appears to argue.

> This Court held in *Schaffer v. Zoning Hearing Board of Upper Darby Township*, . . . 378 A.2d 1054 ([Pa. Cmwlth.] 1977), that allowances by variance do not create nonconforming uses and that a use allowed by a variance is not one upon which a right of extension may be erected as though it were a nonconforming use.

*In re Pierorazio*, 419 A.2d 221, 222 (Pa. Cmwlth. 1980); *see also Kensington S. Neighborhood Advisory Council v. Zoning Bd. of Adjustment*, 471 A.2d 1317 (Pa. Cmwlth. 1984).

[13] Added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2(a).

contrary to the public interest." *Goldstein v. Zoning Hearing Bd. of Twp. of Lower Merion*, 19 A.3d 565, 569 (Pa. Cmwlth. 2011); *see also* Section 910.2(a) of the MPC; Section 1005.2.A. of the Zoning Ordinance ("The [ZHB] shall hear requests for variances where it is alleged that the provisions of this [Zoning Ordinance] inflict unnecessary hardship upon the applicant[.]" Zoning Ordinance § 1005.2.A). Section 27-1005.2.C of the Zoning Ordinance specifies, in relevant part:

> The [ZHB] may grant a variance provided that all [of] the following findings are made where relevant in a given case:
>
> (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such condition, and not circumstances or conditions generally created by the provisions of this [Zoning Ordinance] in the neighborhood or district in which the property is located.
>
> (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this [Zoning Ordinance] and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
>
> (3) That such unnecessary hardship has not been created by the [applicant].
>
> (4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.
>
> (5) That the variance as granted by the [ZHB] is the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

Zoning Ordinance § 27-1005.2.C.

Section 912.2(b) of the MPC[14] further states: "In granting any variance, [a zoning hearing] board may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of [the MPC] and the [applicable] zoning ordinance."  53 P.S. § 10910.2(b); *see also* Section 1005.2.A of the Zoning Ordinance ("In granting any variance[,] the [ZHB] may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of this [Zoning Ordinance] and the [MPC]."  Zoning Ordinance § 1005.2.A).

This Court has ruled:

> **The conditions imposed must bear a reasonable relation to the protection of the public interest**, *see VanSciver v. Zoning B[d.] of Adjustment*, . . . 152 A.2d 717 ([Pa.] 1959), **and be reasonable under the facts of the case**, *see Fifty-fourth St[.] C[tr.], Inc. v. Zoning B[d.] of Adjustment*, . . . 150 A.2d 335 ([Pa.] 1959).
>
> This is an extension of the [zoning hearing board's] power to deny a variance where, though a hardship has been established, it has not been shown to the [zoning hearing board's] satisfaction that the proposed use would not be adverse to the public interest.  'Since **a zoning [hearing] board** has power to deny an application where the evidence shows that it would be contrary to the public interest, it **necessarily possesses the lesser power to impose restrictions on the permit designed to eliminate its objectionable features**.'  R. Ryan, Pennsylvania Zoning § 9.4.18 (1970).  *See Fifty-fourth Street Center, Inc., supra.* [sic]  This suggests that, in order to impose conditions, there must be a determination that the application, if granted, would be detrimental to the public interest.  *See* R. Ryan, *supra* § 9.4.18.

*Appeal of Bd. of Supervisors of Solebury Twp., Bucks Cty.*, 412 A.2d 163, 165 (Pa. Cmwlth. 1980) (emphasis added).

Moreover,

---

[14] Added by Section 89 of the Act of December 21, 1988, P.L. 1329.

once it is determined that the proposed use requires a new variance, whether conditions should be imposed upon that new variance must be determined based upon the circumstances surrounding the newly allowed use. It is of no moment whatsoever that a prior variance which allowed a different use may have had fewer or different restrictions.

*Scalise*, 756 A.2d at 168.

Here, the ZHB determined based on substantial record evidence that the Keens' use[15] and the permitted existence of a 3,200-square-foot 5-bay garage/office behind the Property's residence, and the location adjacent to both B&W (with which it shares a driveway) and residences constitutes unique physical circumstances peculiar to the Property that Applicant did not create and which do not lend themselves to another permitted use in the VC Zoning District.[16] *See* ZHB Op. at 31-32. The ZHB declared, in relevant part:

> [A] majority of the [ZHB] believes that the existing location and configuration of the [Property] and possible limitations on reasonable use of existing structures **warrants variance relief** . . . ,[17] especially since both prior [ZHB] decisions

---

[15] [Applicant's] entitlement to use the [P]roperty in a manner other than that permitted by the ordinance arose by virtue of the [Keens' 1986] variance, as expanded by the variance issued in 198[7]. . . . [T]he right to use in conformance with these variances runs with the land, insofar as it is not a right limited to only the [Keens].

*Scalise*, 756 A.2d at 166-67.

[16] The following uses are permitted by right in the Township's VC Zoning District: single-family, detached dwellings; two-family structures; general agricultural uses; retail sale of goods and services, excluding adult businesses; eating and drinking establishments excluding drive-through facilities and fast food restaurants; retail bakery or confectioner; professional offices; multiple use structures; houses of worship; bed and breakfasts; personal and household service establishments (*i.e.*, barber shops, laundromats, tailors, funeral homes); fire and ambulance stations; fraternal clubs/lodges; Township buildings/structures; no-impact home-based businesses; forestry activities; convenience stores or store/service stations; tourist boarding; and ancillary accessory uses or structures. *See* Section 27-405.2 of the Zoning Ordinance, Zoning Ordinance § 27-405.2; R.R. at 244a-245a.

[17] The ZHB also erroneously referenced that this application involves "changing one nonconforming use to another." ZHB Op. at 32; R.R. at 286a.

directed [the Keens] to return to the [ZHB] for changes or expansion.

However, the [ZHB] can **only** support such relief **if the change in use is conditioned to make it function without completely changing and overburdening the rest of the neighborhood**.

The [ZHB] chose the [C]onditions it imposed with this goal in mind. . . .

. . . .

. . . . For the avoidance of [d]oubt the [ZHB] believes all of these [C]onditions are needed and appropriate. A majority believes that if these [C]onditions are implemented the [A]pplicant's use as a trucking/hauling operation related to delivering quarry materials can function on this [Property] without changing the neighborhood and invading the reasonable use and enjoyment of surrounding properties.

ZHB Op. at 32-34 (emphasis added); R.R. at 286a-288a (emphasis added).

Applicant only appeals from the ZHB's imposition of Conditions b and e. Relative to Condition b, which limits trucking/hauling operation hours to Monday through Friday between 6:00 a.m. and 6:00 p.m., the ZHB ruled:

Hours of operation were and remain one of the central concerns and [C]onditions of the [ZHB] without which NO [ZHB] MEMBER would have voted for a variance. Under Township Code Section 27-741 (R.[R. at] 250a-R.[R. at] 254a)[,] [the Township] prohibits any aspect of quarrying operations, including transport and delivery except between the hours of 7[]AM and 5 PM five days per week (See [Zoning Ordinance] Section[s] 27-741[.]B[](7) and [B](9) (R.[R. at] 251a). A majority of the [ZHB] supported 6 AM to 6 PM Monday through Friday[,] but no operations outside those time frames.

ZBH Op. at 35; R.R. at 289a.

Applicant's noise study/abatement expert Robert G. Richardson (Richardson) testified that he performed a study of the heavy vehicle noise from the Property on October 26, 2016 between 4:48 a.m. and 5:44 a.m., during which he

10

measured the sound made by two Company dump trucks idling and then revving louder every thirty seconds to simulate trucks accelerating and leaving the Property.[18] *See* FOFs 60-62. Richardson concluded that the noise levels produced in that process were below 60 decibels at four locations, which complied with Section 27-708.B of the Zoning Ordinance (Noise and Vibration Control), Zoning Ordinance § 27-708.B. *See* R.R. at 201a-204a. However, Richardson acknowledged that his study did not measure for air brakes, back-up beepers, trucks moving on gravel, or driver gear-shifting techniques/revolutions per minute (RPMs), and he admitted that the decibel levels would increase as the number of simultaneously operated trucks increased. *See* FOFs 63-64. Accordingly, the ZHB questioned whether the simulation recreated the actual noise created by the Company's operation, *see* FOF 66, and further declared:

> The [ZHB] accepts at face value the results reported by [Richardson] for the one day he studied, but the [ZHB] believes far more weight should be placed on the testimony of neighbors who live within close proximity to the [Property], than to the test studies done on one particular day for a 56[-]minute period of time, and therefore does not put great weight on [Richardson's] testimony.

FOF 67.

The ZHB considered credible testimony provided by the Urffers' land planning, subdivision and zoning expert Joseph Zadlo (Zadlo) that the neighborhood around the Property was substantially rural, consisting mostly of farmland, woodland and scattered single-family homes. *See* FOFs 95, 99. The ZHB deemed credible Mr. Urffer's testimony that the Keens' electrical contracting business consisted of three employees using two small vans, and a Kubota front-end loader (all of which were stored in the garage except when in use), that the area closest to the rear of the Urffers' property was never used for the Keens' business, and that no noise emanated

---

[18] Richardson's test used two dump trucks because Menkins informed him that no more than two dump trucks leave the Property at any given time. *See* R.R. at 105a-106a, 110a, 201a.

from the Property during the Keens' use and occupancy.[19] *See* ZHB FOF 19, 22-23, 26, 101-103, 109. Zadlo confirmed that the Keens' operation and the Company's operation on the Property were not of the same type. *See* FOFs 97-98.

Mr. Urffer stated that the dump truck engines run approximately 15 minutes before leaving, and the idling and beeping back-up alarms wake them at night/early morning, beyond the hours that Applicant claims the Company operates. *See* FOF 107. The Urffers logged times and frequency of the Company's trucks leaving the Property, which reflect that they left on May 4, 2016 as follows: three at 1:08 a.m., two at 1:24 a.m., one at 1:28 a.m., two at 1:41 a.m., one at 2:48 a.m., one at 3:13 a.m., one at 3:19 a.m. and one at 3:37 a.m. *See* FOF 105; *see also* R.R. at 218a. On August 15 (overnight to) August 16, 2016, the Urffers recorded the following truck departures: 9:00 p.m., 9:25 p.m., 10:15 p.m., 10:25 p.m., 10:45 p.m., 12:14 a.m., 12:20 a.m., 12:40 a.m., 12:50 a.m., 1:10 a.m., 1:26 a.m., 1:40 a.m., 2:35 a.m., 2:48 a.m. and 3:19 a.m. *See* FOF 105; *see also* R.R. at 219a.

The ZHB found credible Pilla's testimony that the Company's operation on the Property has changed her home's outdoor environment. *See* FOFs 69, 74. Specifically, Pilla cannot leave her windows open at night because she hears ongoing truck noise, including back-up beepers, and men arguing and screaming emanating from the Property. *See* FOF 70.

The ZHB also declared credible neighbor David Boric's (Boric) testimony that, in 2016, he heard trucks and people talking at all hours.[20] *See* FOFs 72, 74. Boric recorded metal banging, trucks running and men working on trucks between 1:00 a.m. and 5:00 a.m. on at least thirteen occasions between December 19, 2016 and January 19, 2017. *See* FOFs 72-73. Boric lamented that spring 2017 will

---

[19] The ZHB did not find Menkins' testimony on the same subject credible. *See* FOF 25.

[20] Boric lives in the residential property immediately behind and to the north of the Property. *See* FOF 71.

be the first time in 20 years that he would have to keep his windows closed. *See* FOF 73.

Because substantial record evidence supported the ZHB's determination that noise from the Company's operation of its dump trucks on the Property has negatively impacted the surrounding property owners, the ZHB was authorized to impose reasonable conditions necessary to minimize or neutralize the intrusion on the neighborhood. *Solebury Twp.* In particular, the ZHB may impose reasonable limitations on operating hours. *See Scalise*; *Appeal of U.S. Aluminum Corp. of Pa.*, 553 A.2d 1046 (Pa. Cmwlth. 1989). Since Applicant's principal use is permitted in the Township's General Industrial (GI) Zoning District, to support Condition b, the ZHB referenced Sections 27-741.B(7) and (9) of the Zoning Ordinance,[21] which authorizes quarrying/mining/extraction-related industries, including deliveries to and from the sites, between 7:00 a.m. and 5:00 p.m., Monday through Friday. *See* Zoning Ordinance §§ 27-741.B(7), (9).[22] *See* Zoning Ordinance § 27-708.B. Based upon the circumstances presented in this appeal, the ZHB was more generous with Condition b.

Applicant's hauling business is not a permitted use in the VC Zoning District. Condition b addresses the concerns expressed by the experts and the

---

[21] Quarrying, mining or extractive operations and storage, maintenance and repair of quarry vehicles are uses permitted by special exception in the Township's GI Zoning District. *See* Zoning Ordinance § 27-408.4.A, E.

[22] This Court acknowledges that Section 27-708.B of the Zoning Ordinance already prohibits continuous noise in excess of the maximum permissible sound pressure levels (in decibels) at the Property line along residential district boundaries: 63 between 10:00 p.m. and 6:00 a.m.; 71 between 6:00 a.m. and 10:00 p.m. (11:00 p.m. Friday and Saturday). Applicant declares that since Section 27-708.B of the Zoning Ordinance already imposes noise restrictions on Applicant's operation, Condition b is unreasonable. However, the ZHB possesses the authority to condition the variance to limit or eliminate any adverse impact on the neighbors. *Solebury Twp.* The ZHB determined that limiting Applicant's operation to certain hours is necessary to protect the community regardless of whether noise from the operation specifically violates the noise ordinance. Because substantial record evidence supports the ZHB's conclusion, Condition b is reasonable.

neighbors about noise from the equipment use and the time of day it is used. Conditioning the variance by limiting Applicant's operating hours makes it more compatible with the VC Zoning District. Because Condition b is consistent with the Zoning Ordinance/MPC-imposed authority to safeguard the public's health, safety and welfare, and is supported by the record evidence, it is reasonable and the ZHB did not abuse its discretion by imposing it.[23]

Relative to Condition e requiring Applicant to obtain land development approval, the ZHB stated:

> A majority of the [ZHB] also felt strongly that Applicant's operation required a thorough and approved land development plan. The [ZHB] was particularly concerned about the washing of trucks, water run[-]off, buffering, screening and other controls that a land development plan would address. Although the [ZHB] leaves actual plan review to the Township and the Planning [C]ommission, the [ZHB] hopes that waivers are not granted which would nullify the concerns the [ZHB] believes would be addressed in a land development.

ZHB Op. at 35; R.R. at 289a. The ZHB found credible Mr. Urffer's concern that Applicant's truck washing takes place wherever the dump trucks are parked, and the water run-off therefrom *may* contaminate his property. *See* FOF 108. Kovach also described her *worries* about Applicant's expansion and water run-off because the Property partially drains to her property. *See* FOF 110.

However, "'speculation does not amount to substantial evidence.'" *Frey v. Unemployment Comp. Bd. of Review*, 589 A.2d 300, 303 (Pa. Cmwlth. 1991) (quoting *Bobchock v. Unemployment Comp. Bd. of Review*, 525 A.2d 463, 465 (Pa.

---

[23] Applicant argues that the ZHB should have applied this Court's holding in *Itama* to the facts of this case. Therein, this Court declared that an increase in the intensity of a prior nonconforming use, such as variations in the types of vehicles and hours of operation, did not justify a finding of a new or different use. However, in the instant appeal, the Court is called upon to examine a new use variance, not a change in a lawful nonconforming use. Because the law and circumstances are distinguishable, *Itama* is inapposite.

14

Cmwlth. 1987)). Further, Section 27-405.6 of the Zoning Ordinance states: "In accord with Township Subdivision and Land Development Regulations [Chapter 22] and the requirements of the [MPC], a land development plan is required for improvement to any lot, parcel, or tract of land. Municipal review and approval of the land development is required prior to issuance of any permits." Zoning Ordinance § 27-405.6. Finally, the ZHB acknowledged that it lacks the authority to require Applicant's compliance with land use development regulations as a variance approval condition. Accordingly, because Condition e is not supported by the Zoning Ordinance/MPC or the record, it is not reasonable, and the ZHB abused its discretion by imposing it.

Based on the foregoing, we affirm the trial court's decision insofar as it upholds the ZHB's imposition of Condition b, and reverse the trial court's decision as to Condition e.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

W.J. Menkins Holdings, LLC, :
           Appellant :
         :
        v. :
         :
Douglass Township, Berks County :
Zoning Hearing Board, Township of :
Douglass, Dennis Urffer and : No. 1020 C.D. 2018
Judith Urffer :

## O R D E R

AND NOW, this 2nd day of May, 2019, the Berks County Common Pleas Court's (trial court) June 28, 2018 order is affirmed insofar as it affirms the Douglass Township Zoning Hearing Board's (ZHB) imposition of variance condition (Condition) b. The portion of the trial court's order that upheld ZHB Condition e is reversed.

_____
ANNE E. COVEY, Judge