# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

South Broad Street Neighborhood    :
Association    :
   :
        v.    :    No. 1454 C.D. 2017
   :    Argued: March 12, 2019
Zoning Board of Adjustment    :
and City of Philadelphia    :
and Great Real Estate, LLC    :
   :
Appeal of: Great Real Estate, LLC    :

**BEFORE:**    **HONORABLE MARY HANNAH LEAVITT, President Judge**
            **HONORABLE P. KEVIN BROBSON, Judge**
            **HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge**

**OPINION BY JUDGE BROBSON**         **FILED: May 7, 2019**

Great Real Estate, LLC (Owner) appeals[1] from an order of the Court of Common Pleas of Philadelphia County (common pleas), dated September 6, 2017. Common pleas reversed the decision of the Zoning Board of Adjustment of the City of Philadelphia (Board), which granted Owner's application for a use variance. For the reasons discussed below, we affirm common pleas' order.

## I. BACKGROUND

In 2016, Owner purchased the real property at issue in this case, 1244 South Broad Street in the City of Philadelphia (property). The property is located in South Philadelphia between Wharton and Federal Streets on Broad

---

[1] The Court precluded the Board and City of Philadelphia, who are also named as appellees in this case, from filing briefs in this matter due to their failures to conform to this Court's order directing them to do so.

Street. The surrounding area consists primarily of multi-family residential buildings and commercial uses, with a few single-family residential buildings and one large, 50-unit residential building.

The property is improved with a three-story building of approximately 4,400 square feet and is located in Philadelphia's RSA-5 zoning district, within which no multi-family uses are permitted under the applicable provisions of the Philadelphia Zoning Code (Zoning Code). On or about July 16, 2013, the Board granted a variance to the prior owner of the property, allowing use of the building as a three-unit multi-family dwelling, with each of the three floors of the building as a separate dwelling unit. On March 29, 2016, shortly before it closed on its purchase of the property, Owner applied to the Philadelphia Department of Licenses and Inspections (L&I) for a zoning/use registration permit to convert the building from three residential units into five. L&I denied the request, noting that multi-family housing is not permitted in the RSA-5 zoning district. Owner then applied to the Board for a use variance to allow conversion of the building from three residential units into five (the proposal). The Board required that Owner meet and confer with the South Broad Street Neighborhood Association (Association), a registered community organization for the neighborhood in which the property is located. Thereafter, the Board received a letter from the Association, unanimously opposing the proposal, and scheduled a hearing on the matter.

At the hearing on November 16, 2016, Owner presented the testimony of David McArthur (McArthur), a licensed architect who worked with Owner on the proposal. (Reproduced Record (R.R.) at 181a.) McArthur testified that the block surrounding the property consists mainly of commercial and multi-family properties

2

and that the proposal would be permitted by right under the most restrictive multi-family zoning designation (RM-1) in the Zoning Code. (*Id.* at 182a-83a.)

Regarding the proposal specifically, McArthur testified that the building on the property consists of three floors. The first floor is approximately 1,500 square feet, which McArthur said was "fairly unfeasible" for use as a one-bedroom apartment—a configuration necessitated, in McArthur's opinion, by the absence of windows along the side walls of the first floor. (*Id.* at 183a.) Regarding the first floor, McArthur testified that it is "not really usable as a single-family unit" and that it is vacant because it is an unfinished space with some incomplete framing. (*Id.* at 186a-87a.)

McArthur also testified that the second floor is approximately 1,400 square feet, which McArthur said is "a little larger than the typical unit sizes in [the] area" and that the third floor is 870 square feet. (*Id.* at 184a.) He added that tenants occupied the second and third floors at the time of the hearing. (*Id.* at 187a.) According to McArthur, Owner altered its proposal in response to comments from the community and ultimately decided on a proposal that includes dividing each of the first and second floors into two separate units, adding exterior light and ventilation access to the first floor unit, and leaving the third floor untouched. (*Id.* at 184a-85a.)

Owner then presented the testimony of Al Greenberg (Greenberg), a principal of Owner. Greenberg testified that the surrounding area consists primarily of multi-family buildings. Owner's counsel asked Greenberg to explain why Owner was seeking a variance, to which Greenberg responded: "The size of the units would be very large compared to what would make sense. So we're looking to have it divided to make more sense for the demographics of the area." (*Id.* at 188a.) He

3

testified that the "building itself is very large" and described the second floor unit as "very, very large." (*Id*.) In response to a question about how he will find a tenant for the vacant first-floor space, Greenberg also testified that, if Owner is granted the requested variance, "[i]t will be much easier and make more sense for the demographics and affordability of those types of units." (*Id.* at 191a.)

Regarding the first floor specifically, Greenberg testified that the space is unoccupied and that Owner had not yet attempted to find a tenant for that space. (*Id.*) He opined that the previous owner had kept the first floor unfinished for the previous two or three years because it "is so unreasonable to try to use it as a unit." (*Id.* at 189a.) In conclusion, Greenberg also reviewed Owner's efforts to address community concerns about the proposal, including by reiterating Owner's offer to "clean up the front of the property and the sides." (*Id.* at 192a, 205a.)

The Association presented the testimony of several witnesses in opposition to the proposal. First, Anthony Bruttaniti (Bruttaniti), the Association's zoning chairman, testified that, though Owner had satisfied some of the community concerns about the proposal in earlier revisions to its plans, there remained a concern about the added density the proposal would bring to the neighborhood. The Association's board, therefore, continued to oppose the proposal unanimously, as it had prior to the hearing (and as had all members of the community in attendance at the prior public meeting). (*Id.* at 193a-95a, 201a.) Bruttaniti also reviewed the contents of a letter of opposition that the Association submitted to the Board before the hearing. The letter indicated that, because Owner was aware of the variance allowing three units when Owner purchased the property three years ago, Owner cannot demonstrate a hardship that would justify a variance. (*Id.* at 195a.)

4

Bruttaniti also testified about problems in the neighborhood created by absentee landlords and generally poor building maintenance. He noted partially collapsed buildings, perpetual vacancy, and a lack of participation by tenants in the Association's community-wide volunteer cleanup efforts. (*Id.* at 199a-203a.) He concluded that Owner's proposal lacks "quality units that we would expect to have on South Broad Street that would attract professional people." (*Id.* at 203a.)

In response to the Board's question about the number of units in surrounding multi-family buildings, the Association presented the testimony of Christopher Todd Chadwick (Chadwick), who is affiliated with the Association. Chadwick testified that most of the multi-family buildings on the surrounding block have fewer than five units and that the Association is concerned that the block is "approaching an extremely high density." (*Id.* at 196a-98a.) He also expressed his preference for increasing the number of "higher-end tenants" that rent larger properties—a goal which he claimed Owner's proposal would not further. He expressed his doubts that Owner's proposal would add value to the neighborhood, adding: "I just don't think that [Owner's] design is good." (*Id.* at 198a.)

The Association concluded its presentation with the testimony of two city officials. First, Dillon Mahoney, from the office of Philadelphia City Councilman Kenyatta Johnson, confirmed the Board's receipt of a letter from Councilman Johnson's office opposing the proposal. He also testified that the Association was more nearly affected by the proposal than another registered community organization that supports the proposal. (*Id.* at 205a.) Second, Martin Gregorsky (Gregorsky) of the Philadelphia City Planning Commission testified that the South District portion of the city's comprehensive plan recommends rezoning

5

the area in which the property is located to be included in the city's most restrictive multi-family zoning district (RM-1). (*Id.*)

On November 16, 2016, the Board issued an order granting Owner's request for a variance. To reach that result, the Board made the following relevant findings of fact and conclusions of law:

Findings of Fact

. . . .

16. Both [McArthur and Greenberg] described the area immediately surrounding the [p]roperty as primarily a mix of commercial uses and multi-family dwellings.

. . . .

20. [McArthur] noted the characteristics of the existing building that made its first floor unsuitable for use as a single dwelling unit.

. . . .

25. When asked by [Owner's counsel] if decreasing the size of the first and second floor units would enable him to find tenants for that space, [Greenberg] said yes and added "it will be much easier and make more sense for the demographics and affordability of those types of units."

. . . .

39. The Board found [Owner's] witnesses' testimony regarding the nature of surrounding uses, the layout of the existing building, and the feasibility of using the [p]roperty as a three-family dwelling to be credible.

Conclusions of Law[2]

. . . .

8. The Board concludes that [Owner] here established entitlement to the requested variance.

---

[2] We note that some of the Board's written "Conclusions of Law" address questions of both law and fact.

. . . .

11. The Board found [McArthur's and Greenberg's] representations regarding the marketability of the first and second floor units as currently configured credible, persuasive, and sufficient to establish unnecessary hardship.

12. The Board rejects [the Association's] suggestion that any hardship is self-inflicted because [Owner] purchased the [p]roperty knowing it was approved for three-family use.

. . . .

14. The Board additionally concludes the variances [sic] requested are the minimum necessary to afford relief. Applicant does not propose expanding the existing building and the number of units proposed would, based on the [p]roperty's lot size, be permitted by right under RM-1 zoning.

15. The Board finally concludes that the requested increase in dwelling units will not adversely affect the public health, safety or welfare. With respect to this criterion, the Board finds arguments raised by opponents to be vague and not supported by credible, relevant evidence.

. . . .

19. For all of the above stated reasons, the Board concludes that the requested variance was properly granted.

(Appellant's Br., Appendix 1 at 1-9.) The Association appealed the Board's decision to common pleas. By order dated September 6, 2017, common pleas reversed the Board's decision. Owner then appealed to this Court.

7

## II.  ISSUES ON APPEAL

On appeal,[3] Owner raises the following three issues for our consideration:  (1) whether the Board abused its discretion and/or committed an error of law by concluding that Owner demonstrated the existence of an unnecessary hardship associated with its use of the property; (2) whether the Board abused its discretion and/or committed an error of law by concluding that Owner demonstrated that the proposal would not be detrimental to the public welfare or to the appropriate use of surrounding properties; and (3) whether the Board abused its discretion and/or committed an error of law by concluding that Owner demonstrated that the proposal represented the minimum variance necessary to afford relief.

With respect to its first issue on appeal, Owner specifically argues that the Board properly concluded that Owner demonstrated the existence of an unnecessary hardship associated with its use of the property.  Specifically, Owner asserts that there are three bases, each supported by substantial evidence in the record, that support the Board's determination of unnecessary hardship:  (1) the uses of surrounding properties; (2) the physical condition of the property; and (3) the proposed rezoning of the property.

## III.  DISCUSSION

### A. Effect of the 2013 Variance

We first address the effect of the 2013 variance on Owner's present variance request, because, as we will explain, the existence of an applicable variance

---

[3] "Where a trial court takes no additional evidence in an appeal from a decision of the Board, this Court is limited to considering whether the Board erred as a matter of law or abused its discretion." *German v. Zoning Bd. of Adjustment*, 41 A.3d 947, 949 n.1 (Pa. Cmwlth. 2012). "A zoning board abuses its discretion if its findings are not supported by substantial evidence." *Arter v. Phila. Zoning Bd. of Adjustment*, 916 A.2d 1222, 1226 n.9 (Pa. Cmwlth.), *appeal denied*, 934 A.2d 75 (Pa. 2007).

informs our analysis of Owner's request for variance relief. The well-established case law of this Court provides:

> An owner [that] wishes to obtain a modification of a condition [attached to a previously granted variance] . . . can obtain relief if [the owner] establishes:
>
> > (1) Either grounds for traditional variance or changed circumstances which render the condition inappropriate; and
> >
> > (2) Absence of injury to the public interest.

*German*, 41 A.3d at 950 (citations omitted) (quoting *Ford v. Zoning Hearing Bd. of Caernarvon Twp.*, 616 A.2d 1089, 1092 (Pa. Cmwlth. 1992) ("The approach this [C]ourt has taken with regard to . . . conditions placed on . . . special exceptions is also appropriate in cases involving conditions placed on the grant of variances.")); *see also Saber v. Zoning Hearing Bd. of Borough of Roaring Spring*, 526 A.2d 464 (Pa. Cmwlth. 1987) (applying traditional variance criteria to owner's request to modify condition attached to existing variance); *Amoco Oil Co. v. Zoning Hearing Bd. of Middletown Twp.*, 463 A.2d 103, 104 (Pa. Cmwlth. 1983) (holding that showing of change in circumstances can support modification of condition attached to special exception). Thus, an owner seeking relief from a condition attached to an existing variance may decide whether to demonstrate changed circumstances or meet the traditional standard for granting variances. In either case, the owner must also show that the request to modify the condition is not contrary to the public interest. As we have explained, this standard "reflects a respect for the finality of an administrative body's initial analysis of a particular set of circumstances when it decides to grant a variance with conditions, but [it] also acknowledges that changes in circumstances sometimes make conditions no longer appropriate." *German*, 41 A.3d at 950.

9

For changed circumstances to support modification of a condition, the record must contain substantial evidence of exactly "what changes in circumstances render the [previously imposed] conditions *no longer appropriate*." *Id.* (emphasis in original). In *German*, an owner sought to expand the operating hours of his restaurant, where his existing variance was subject to a condition restricting operating hours. The owner argued that increased late-night competition from nearby restaurants and an economic downturn were the changed circumstances supporting his request for modification of the condition. The Court concluded that the record did not contain evidence of the alleged economic downturn or evidence of a change in competitors' operating hours *since the time* owner obtained its variance. The Court, accordingly, held that the Board's finding of changed circumstances was not supported by substantial evidence. *Id.* at 950-52. Thus, the record must contain substantial evidence to show that the claimed change in circumstances occurred between the time the condition was imposed and owner's request for modification. *See id.*; *see also Emery v. City of Phila. Zoning Bd. of Adjustment* (Pa. Cmwlth., No. 725 C.D. 2013, filed Mar. 21, 2014) slip op. at 6 ("The only change evinced in the record was the passage of time and that was insufficient to meet the standards enunciated in *Ford* and *German*.").[4]

An owner that does not show changed circumstances may still obtain modification of a variance condition by meeting the standard to obtain a new variance. *See German*, 41 A.3d at 950; *Saber*, 526 A.2d at 465-66. In *Saber*, a printing business held a variance allowing construction of a loading dock on its property, with a condition limiting operation to times between 7:30 a.m. and

---

[4] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision issued by this Court after January 15, 2008 may be cited "for its persuasive value, but not as binding precedent."

5:30 p.m. After the zoning hearing board granted the owner's request to extend the permitted operating hours to 9:30 p.m., this Court reversed that decision, holding that the owner had failed to establish unnecessary hardship.

Significantly, we described the cognizable hardship in *Saber* as that which was imposed by the condition prohibiting operation *after 5:30 p.m.*, rather than the hardship imposed by the zoning ordinance (which prohibited the loading dock entirely and from which the board had granted the existing variance). *Saber*, 526 A.2d at 465-66. We took the same approach in analyzing the effect of the proposed modification upon the welfare of the community—another element of the traditional variance standard—and discussed whether there was evidence that permitting additional operation *after 5:30 p.m.* would harm the public interest. *Id*. at 466. This approach is sensible, for a use variance is fundamentally a legislative determination that an otherwise nonconforming use, when approved under specific circumstances and subject to specific conditions, is entirely lawful. *See Scalise v. Zoning Hearing Bd. of Borough of W. Mifflin*, 756 A.2d 163, 167-68 (Pa. Cmwlth. 2000). Courts and zoning boards must, therefore, recognize the legal effect of an existing variance when considering an application for a new variance.[5] Thus, we hold that when a court applies the traditional standard for variance relief to a request to modify or remove a condition attached to an existing variance, the court must consider the use of the property *as permitted by the current variance and*

---

[5] That is not to say that an existing variance somehow controls or limits a zoning board's discretion when considering a new variance request under different circumstances for the same property. To the contrary, the prior grant of a variance cannot create entitlement to or precedent for further relief. *Kensington S. Neighborhood Advisory Council v. Zoning Bd. of Adjustment of Phila.*, 471 A.2d 1317, 1320 (Pa. Cmwlth. 1984) ("The fact that a prior variance was issued for this property does not in any way lessen [a]ppellant's burden in the instant case.").

11

*associated conditions* to be the legally permitted use of the property from which the owner is seeking a new variance.

In order to apply the foregoing law to the instant case, we must first address Owner's argument that the 2013 variance should not be considered because Owner abandoned that variance. (Appellant's Br. at 26-27.) This argument appears to be disingenuous, as Owner applied for a permit and now seeks a variance to increase the density of its multi-family use of the property from three (not one or two) units to five. (R.R. at 3a.) Furthermore, Owner's counsel represented on several occasions during the hearing that the property is already subject to a three-unit variance and that Owner is simply "seeking to increase the number of units [from three] to five units." (R.R. at 180a, 208a.) Regardless, Owner did not raise this argument before the Board. We, therefore, do not reach the merits of this issue because Owner has waived it. *Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment*, 804 A.2d 116, 119 (Pa. Cmwlth. 2002) ("If parties do not request that the trial court hear additional evidence, they waive arguments which were not raised before the [B]oard."), *appeal denied*, 814 A.2d 679 (Pa. 2002).

Accordingly, we will treat Owner's variance request as a request to modify a condition attached to the 2013 variance—specifically, to increase the number of units permitted under the 2013 variance from three to five, according to the plans Owner submitted with its application. Under the case law set forth above, Owner could have pursued its requested modification by claiming a change in circumstances requiring a modification of the conditions of the 2013 variance. It appears, however, that Owner did not take that approach, for the record contains no evidence of a change in circumstances between 2013 and 2016. Reflecting this absence of evidence, the Board made no finding or conclusion concerning a change

12

of circumstances during that specific period. Accordingly, because the record cannot support a claim of changed circumstances, we will analyze Owner's request for modification using the same standard applicable to variances generally, and we next address whether Owner has demonstrated unnecessary hardship sufficient to justify granting a variance.

## B. Unnecessary Hardship

A variance is a departure from the exact provisions of a zoning ordinance. *Brennen v. Zoning Bd. of Adjustment of the City of Connellsville*, 187 A.2d 180, 182 (Pa. 1963).[6] The party seeking the variance must show substantial, serious, and compelling reasons for the variance request, including "that unnecessary hardship will result if the variance is denied." *Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 148-49 (Pa. Cmwlth. 2011). "The hardship must be unique to the property at issue, not a hardship arising from the impact of the zoning regulations on the entire district." *Marshall v. City of Phila.*, 97 A.3d 323, 329 (Pa. 2014). An applicant "is *not required* to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose." *Id.* at 330 (emphasis in original). Mere economic hardship, however, "will not of itself justify a grant of a variance." *Id.* (quoting *Wilson v. Plumstead Twp. Zoning Hearing Bd.*, 936 A.2d 1061, 1069 (Pa. 2007)). In other words, "[m]ere hardship is not sufficient; there must be *unnecessary* hardship." *Chestnut Hill*, 155 A.3d at 668 (emphasis in original) (quoting *Pincus v. Power*, 101 A.2d 914, 916

---

[6] This and some other authorities cited in this opinion address variances as governed by the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202 (MPC). Though the MPC does not apply to the City of Philadelphia, which is instead governed by the Zoning Code, we cite relevant precedent from the MPC context where there are no important differences between the provisions of the MPC and the Zoning Code. *See In re Chestnut Hill Cmty. Ass'n*, 155 A.3d 658, 663 n.5 (Pa. Cmwlth. 2017).

(Pa. 1954)). Evidence that the property's legally allowed use is less profitable than the property's proposed use is not sufficient to justify a variance. *Marshall*, 97 A.3d at 330. As we explained in discussing the effect of the 2013 variance, the cognizable hardship is hardship that persists after considering the legal effect of an existing variance, together with any conditions it imposes.

"When an applicant seeks a variance for a property located in Philadelphia, the Board must also consider the factors set forth in the [Zoning Code]." *Singer*, 29 A.3d at 148. Section 14-303(8)(e)(.1)(.a) of the Zoning Code sets forth specific criteria that must be satisfied before the Board may grant a variance. One of those criteria is that "[t]he denial of the variance would result in an unnecessary hardship." Zoning Code § 14-303(8)(e)(.1)(.a). With respect to a use variance, Section 14-303(8)(e)(.2) of the Zoning Code further requires that the Board, in order to reach a conclusion of unnecessary hardship, must make the following factual findings:

(.a) That there are unique physical circumstances or conditions (such as irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions) peculiar to the property, and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of this Zoning Code in the area or zoning district where the property is located;

(.b) That because of those physical circumstances or conditions, there is no possibility that the property can be used in strict conformity with the provisions of this Zoning Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the property;

(.c) That the use variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or

14

permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(.d) That the hardship cannot be cured by the grant of a dimensional variance.

Owner first claims that the evidence of record regarding the uses of surrounding properties supports the Board's conclusion of unnecessary hardship as a matter of law. Owner essentially argues that the neighborhood's transition from single-family to multi-family use (which Owner demonstrated with testimony at the hearing) imposes an unnecessary hardship on Owner if it is not allowed to reconfigure its building from three units to five. In response, the Association argues that Owner's desired increase in the number of authorized units merely reflects Owner's wish to make the highest, most profitable use of its property that the surrounding area will support, which does not demonstrate unnecessary hardship. In its opinion issued pursuant to Pa. R.A.P. 1925(a) opinion, common pleas agreed, noting that "the fact that two smaller units on the first and second floors would make it 'much easier and more sense for the demographics and affordability of those types of units' cannot—as matter of law—support a finding of unnecessary hardship." (Appellant's Br., Appendix 3 at 8.)

While it is true that "the course of time may effect *changes to [the] property and the surrounding area*, which may ultimately result in the creation of an unnecessary hardship that did not previously exist," *S. of S. St. Neighborhood Ass'n v. Phila. Zoning Bd. of Adjustment*, 54 A.3d 115, 120 (Pa. Cmwlth. 2012) (emphasis added), *appeal dismissed as improvidently granted*, 97 A.3d 1200 (Pa. 2014), the nature of surrounding uses is typically not dispositive of the unnecessary hardship issue. *See* Zoning Code at § 14-303(8)(e)(.2)(.a) (requiring physical circumstances unique to property, rather than conditions created by Zoning

15

Code in area of property); *Spadaro v. Zoning Bd. of Adjustment of Phila.*, 147 A.2d 159, 161 (Pa. 1959) (holding that grant of variances to four neighboring properties does not, in itself, demonstrate unnecessary hardship). *But see Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 642 (Pa. 1983) (holding that property's dense commercial and industrial surroundings make it "virtually unusable" as residential property and are sufficient grounds for conclusion of unnecessary hardship).

Here, the Zoning Code requires a factual finding that the unnecessary hardship is due to "unique physical circumstances or conditions . . . peculiar to the property," rather than to "circumstances or conditions generally created by the provisions of this Zoning Code in the area or zoning district where the property is located." Zoning Code § 14-303(8)(e)(.2)(.a). Accordingly, that a hardship is "unique to the property" remains a key requirement for a conclusion of unnecessary hardship. *Marshall*, 97 A.3d at 329. Owner did present evidence to the Board regarding the surrounding area's transition toward multi-family use (R.R. at 183a), but this case does not present unusual circumstances like those in *Valley View*. Accordingly, Owner's argument that surrounding uses have imposed an unnecessary hardship is not persuasive without also examining the extent to which the property is *uniquely* burdened by circumstances or conditions peculiar to the property. We now turn to that question.

With respect to the physical condition of the property, Owner argues that the physical condition itself imposes an unnecessary hardship that should justify a variance. Specifically, Owner claims that it presented testimony that the property is not marketable as it is currently configured, that the Board credited that testimony, and that this finding is sufficient to establish unnecessary hardship. In response, the

16

Association argues that Owner did not present evidence that the property was unmarketable as currently configured and admitted that tenants occupied two of the three floors at the time of the hearing, demonstrating that the property was not, in fact, unmarketable. As described above, common pleas held that Owner's hardship evidence supported only a finding that its use of the property would be easier or more convenient if the variance were granted. Common pleas concluded that such a finding is not legally sufficient to support the Board's conclusion of unnecessary hardship. Given the following analysis, we agree.

The Board's conclusion of unnecessary hardship rests entirely on the testimony of Greenberg and McArthur at the hearing before the Board:

> 11. The Board found [McArthur's and Greenberg's] representations regarding the marketability of the first and second floor units as currently configured credible, persuasive, and sufficient to establish unnecessary hardship.

(Appellant's Br., Appendix 1 at 8.) Accepting as true all such "representations regarding . . . marketability," together with the other relevant factual findings on which the Board's determination rests, the Board's findings are, as a matter of law, insufficient to establish unnecessary hardship. The Board failed to make the factual findings required by the Zoning Code—that the unnecessary hardship arises from unique physical characteristics of the property, and that the property cannot be used in conformity with the Zoning Code. *See* Zoning Code § 14-303(8)(e)(.2)(.a)-(.b). The marketability findings the Board made concern "the impact of the zoning regulations on the entire district" and are, therefore, insufficient as a matter of law to support a conclusion of unnecessary hardship. *Marshall*, 97 A.3d at 329. While an applicant "is not required to show that the property at issue is valueless without the variance," we note that, to the contrary, Owner admitted that tenants occupied

17

two of its three units at the time of the hearing. *See id.* At most, the Board found that the property would be more easily marketable and more profitable if the Board were to grant the requested variance. This mere economic hardship is insufficient as a matter of law to demonstrate the unnecessary hardship required for a variance. *Id.* at 330.

The evidence on which the Board relied for its findings similarly suggests mere economic hardship and, thus, supports our conclusion. There was no detailed testimony that the units in the building are larger than surrounding multi-family buildings or that the permitted configuration of Owner's property is somehow different from nearby properties in a way that imposes hardship. There was no comparison of square footage, rental rates, or rental prospects with similar properties in the area. Instead, the Board credited testimony that (1) with respect to the first floor only, because of its size, it is "*fairly* unfeasible" for use as a single unit, and that it is "not *really* usable as a single-family unit," (R.R. at 186a-87a) (emphasis added); (2) with respect to the second floor only, it is "*a little* larger than the typical unit sizes in [the] area," (*id.* at 184a) (emphasis added); (3) in the three-unit configuration, the units would be "very large *compared to what would make sense,*" (*id.* at 184a) (emphasis added); (4) smaller units would "*make more sense*" for the demographics of the area, (*id.* at 188a) (emphasis added); (5) the "building itself is very large" and the second floor unit is "very, very large," (*id.* at 188a); (6) the five-unit variance would make renting units "much *easier*," and would "*make more sense* for the demographics and affordability" of the area, (*id.* at 191a) (emphasis added); and (7) the first floor had remained vacant because it "is so *unreasonable* to try to use it as a unit," (*id.* at 189a) (emphasis added). This testimony may speak to which uses are appropriate, convenient, or reasonable for

18

the property, but it does not address how unique aspects of the property impose an *unnecessary* hardship on Owner, given the three-unit use already permitted by the 2013 variance. Based on the foregoing analysis, we conclude that the Board's factual findings are legally insufficient to support its conclusion that Owner suffers unnecessary hardship.

Our conclusion in this case is also supported by a comparison of the facts here with those of cases where courts upheld variance relief. In *Marshall*, the conclusion of unnecessary hardship rested upon credited testimony that an existing, vacant school building—which was physically unique and uniquely situated— would suffer disuse without "major, prohibitively expensive renovation." *Id.* at 332-33. Our Supreme Court held that such testimony was sufficient to establish unnecessary hardship. This Court has more recently noted:

> [I]n . . . cases where the hardship related to the building itself and there was undue financial burden on the applicants to bring the structure into conformance with the applicable zoning ordinances, the structure was blighted or a legal non-conforming use. Additionally and notably, the expense associated with the extensive reconstruction or demolition of the building was required in order to make use of the property in conformance with the [Z]oning [C]ode. In other words, unless the variances were granted, the applicants would not have been able to make reasonable use of the property without undue financial burden. Those circumstances are not present here.

*Pequea Twp. v. Zoning Hearing Bd. of Pequea Twp.*, 180 A.3d 500, 508 (Pa. Cmwlth. 2018). Here, there is no allegation that the property will suffer disuse if the variance is not granted, nor that Owner must incur expenses to comply with the Zoning Code. The property is already subject to the 2013 variance, which permits three-unit use, and the only unoccupied portion of the property cannot be occupied because Owner has intentionally left it untenantable. While those facts are not

19

dispositive under *Marshall*, they do confirm our earlier conclusion that the Board improperly granted the variance, given the lack of support for the Board's conclusion of unnecessary hardship.

Finally, Owner argues that the evidence of record regarding the proposed rezoning of the property supports the Board's conclusion of unnecessary hardship as a matter of law. Owner argues that the Planning Commission's proposed rezoning of the property to RM-1 (the city's most restrictive multi-family zoning district) would permit five-unit use of the property as of right and that, therefore, denial of a variance imposes an unnecessary hardship. In response, the Association argues that proposed future zoning changes are irrelevant in determining whether a variance is appropriate.

Testimony regarding the proposed rezoning addresses "hardship that arises when outdated zoning prohibits the most productive use of property[, which] affects the entire neighborhood and is not unique to the property for which a variance is sought." *Jenkins v. City of Phila.* (Pa. Cmwlth., No. 1470 C.D. 2014, filed Aug. 3, 2015), slip op. at 10. Because zoning applicable to the entire zoning district is, by definition, not unique to the property, it does not support a conclusion of unnecessary hardship. Whether an area should be rezoned is a legislative determination that the Board is not empowered to make. *Comm'rs of Plymouth Twp. v. Wannop*, 320 A.2d 455, 458 (Pa. Cmwlth. 1974). Thus, Gregorsky's testimony regarding the proposed rezoning is not relevant to the Board's determination of whether Owner's particular property suffers unnecessary hardship.

## IV. CONCLUSION

For the foregoing reasons, the Board erred when it concluded that the property is subject to an unnecessary hardship. Because the Board committed an

20

error of law, common pleas did not err in reversing the Board's decision and order.[7] Accordingly, we affirm common pleas' order.

P. KEVIN BROBSON, Judge

Judges Cohn Jubelirer and Fizzano Cannon did not participate in the decision of this case.

---

[7] Given our disposition above, we need not address Owner's remaining arguments on appeal, because, without establishing unnecessary hardship, Owner cannot obtain the requested use variance.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

South Broad Street Neighborhood　　　：
Association　　　　　　　　　　　　：
　　　　　　　　　　　　　　　　　：
　　　　v.　　　　　　　　　　　　：　No. 1454 C.D. 2017
　　　　　　　　　　　　　　　　　：
Zoning Board of Adjustment　　　　　：
and City of Philadelphia　　　　　　　：
and Great Real Estate, LLC　　　　　　：
　　　　　　　　　　　　　　　　　：
Appeal of: Great Real Estate, LLC　　　：

# **O R D E R**


AND NOW, this 7th day of May, 2019, the order of the Court of Common Pleas of Philadelphia County is hereby AFFIRMED.


　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　P. KEVIN BROBSON, Judge