# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marla McCloskey              :
                                     :
      v.                     : No. 1093 C.D. 2020
                                     : ARGUED: May 13, 2021

The Zoning Hearing Board of the  :
Township of Rostraver, Edward J.  :
Burns, J&J Real Estate, L.P. and   :
James Flannery and Kelly         :
McCloskey, Tim Kuma, Jackie      :
Tonini, Ken Koury and Charlotte  :
Kuma                            :
                                     :
Appeal of: Marla McCloskey, Kelly :
McCloskey, Tim Kuma, Jackie      :
Tonini, Ken Koury and Charlotte  :
Kuma                            :

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                          FILED: August 9, 2021

Appellants Marla McCloskey, Kelly McCloskey, Tim Kuma, Jackie Tonini, Ken Koury and Charlotte Kuma (collectively, Objectors) appeal from the Court of Common Pleas of Westmoreland County's (Trial Court) October 8, 2020 order.[1] Through this order, the Trial Court affirmed the Zoning Hearing Board of the Township of Rostraver's (Board) May 24, 2019 decision, by which the Board granted Appellees Edward J. Burns, J&J Real Estate, L.P., and James Flannery's

---

[1] This order is dated October 5, 2020, as is the opinion to which it is attached, but neither the opinion nor the order were docketed until three days later. *See* Notice of Appeal, App. B at 3.

(collectively, Applicants) request to modify a previously granted use variance. After thorough review, we reverse.

## I. Facts and Procedural History

In 1984, Mr. Burns and his wife, Virginia, purchased a 1.75-acre property (Small Lot) located in Rostraver Township between Finley Road and Interstate 70. Board's Decision, Findings of Fact (F.F.) ¶¶1, 5. Mr. Burns then set up a road paving business on the Small Lot and, in 1990, expanded it by purchasing an adjacent 11.75-acre property (Large Lot), on which there was a preexisting, 2-story, 2,600-square-foot office building that housed a trailer sales business. *Id.* ¶¶1, 5-6. Notably, despite the non-residential nature of this business, both the Large Lot and Small Lots are located in the Township's R-2 residential district. Trial Ct. Op., 10/8/20, at 2. In 1999, the Burnses sought a use variance for the Large Lot, in the form of an "extension of nonconforming use of construction, office, storage building and material storage of adjoining property[.]" Board's Decision, F.F. ¶7; Reproduced Record (R.R.) at R104.[2] The Board granted this use variance, subject to a number of conditions. R.R. at R106.[3]

---

[2] Objectors did not adhere to the Pennsylvania Rules of Appellate Procedure's requirements for how their Reproduced Record's pages must be numbered. *See* Pa. R.A.P. 2173 ("Except as provided in [Pa. R.A.P.] 2174 (tables of contents and citations), the pages of . . . the reproduced record . . . shall be numbered separately in Arabic . . . followed . . . by a small a, thus 1a, 2a, 3a, *etc*."). Nevertheless, for simplicity's sake, we will use the page numbers provided by Objectors.

[3] These conditions were:

> 1. No additional businesses permitted.
> 2. New extension building to be utilized for storage of equipment and materials relating only to paving business.
> 3. New building to be constructed and located per drawing submitted to the . . . Board.

**(Footnote continued on next page…)**

2

Mr. Burns ran his road paving business for many years before deciding to retire, and subsequently put both the Large Lot and the Small Lot up for sale. *Id.* ¶8. On September 20, 2018, Mr. Burns and Mr. Flannery entered into an agreement of sale for the Large Lot, the Small Lot, and five other residentially zoned lots that are not the subject of this appeal, contingent upon obtaining a use variance allowing a tractor dealership and service center to be operated on these properties. *Id.* ¶¶2, 9; R.R. at R108, R117-23. The agreed-upon sale price for all seven lots was a total of $450,000. R.R. at R117-18.

In September 2018, Applicants filed a use variance application (First Application) pertaining to all seven properties. *Id.* at ¶9. The Board denied the First Application on November 26, 2018, concluding that Applicants had failed to establish that an unnecessary hardship existed, such that they could not develop these properties in line with the dictates of the Township's Zoning Ordinance,[4] as well as that the desired variance would alter the essential character of the surrounding area and was not the minimum necessary to afford relief. *Id.*

---

4. Noise levels to be maintained per . . . [the] Township Ordinance.
5. Area surrounding new or existing structure to be maintained dust free.
6. No outside shredding of earth materials to be permitted.
7. All outside stored paving materials to be covered.
8. Hours of operation to be conducted from 6:00 a.m. to 9:00 p.m. Monday thru [sic] Saturday. Emergency work is excluded.
9. No additional structures permitted on property unless in compliance with existing R[-]2 zoning requirements.
10. Fence in storage area. Fence height to be 6 [feet] to be completed within thirty (30) days after extension building is completed.

R.R. at R106.

[4] Township of Rostraver Zoning Ordinance, Westmoreland County, Pa., *as amended* (1995), available at https://ecode360.com/11601653 (last accessed August 6, 2021).

Applicants then filed another use variance application (Second Application), which pertained only to the Large Lot and the Small Lot; in doing so, Applicants claimed they were merely asking for a modification of the use variance that had been granted to the Burnses for the Large Lot in 1999. *Id.* ¶10; R.R. at R100. The Board then held a hearing on the matter on April 10, 2019, and granted the Second Application on May 24, 2019, contingent upon Applicants abiding by seven separate conditions.[5] The Board based its decision on several factors. First, the Board noted several differences between the Second Application and the First Application, namely: a. the Second Application involved fewer lots (two versus seven); b. the

---

[5] These conditions were:

> 1. No additional businesses, beyond the existing trailer sales business and the new tractor and agricultural equipment sales and service business are permitted.
> 2. The existing buildings on the Property shall be used only for the storage of [Mr. Flannery's] inventory and equipment, repair work and display area relating to [Mr. Flannery's] business.
> 3. The proposed business will maintain noise, vibration, fumes or odor levels in compliance with the Township Ordinance and will refrain from activity which produces vibration, fumes, odor or similar conditions which could adversely affect the adjacent residential uses[.]
> 4. The Property shall be maintained in a neat and orderly condition.
> 5. Other than the display of its retail products for sale, permitted signage and areas for customers and potential customers to view the products, no other activity shall take place outside of the currently[]constructed buildings.
> 6. No additional structures may be constructed on the Property unless they are in compliance with the existing requirements of the R-2 Zoning District.
> 7. The hours of operation of the proposed tractor sales business shall be from 9:00 a.m. to 5:00 p.m. three (3) days per week and 9:00 a.m. to 8:00 p.m. three (3) days per week. There shall be no Sunday hours of operation.

Board's Decision, Order ¶¶1-7.

Second Application involved modification of an existing use variance, as opposed to a new use variance affecting a larger footprint; and c. unlike the First Application, the Second Application did not propose construction of new buildings. Board's Decision, F.F. ¶10. Second, the Board found that the Large Lot's "hilly and uneven terrain, and abutment with Interstate 70" constituted an unnecessary hardship that had not been created by Applicants. *Id.* ¶12. Third, the Board concluded that the proposed tractor dealership and service center would be less intensive than the Large Lot and Small Lot's existing uses, and would not detrimentally impact the neighborhood in which it would be situated. *Id.* ¶¶13, 17. Fourth, the Board determined that the granted modification was the minimum variance necessary to provide Applicants with suitable relief. *Id.* ¶14. The Board also reasoned that the new use would be fully compliant with the conditions it had imposed upon the Burnses in 1999 that pertained to the original use variance. *Id.* ¶16. Curiously, the Board ruled that the new use did not violate the condition imposed in 1999 that "[n]o additional businesses [are] permitted." *Id.* ¶16(a); R.R. at R106. The Board claimed this was so "because there will be no 'additional business' [sic]. The proposed use replaces the former use for which the variance was granted." Board's Decision, F.F. ¶16(a).

Objectors then appealed the Board's May 24, 2019 decision to the Trial Court, which took no additional evidence and, on October 8, 2020, affirmed the Board. This appeal to our Court followed.

## II. Discussion[6]

Objectors put forth several arguments for our consideration. However, in order to dispose of their appeal, we need only address two of them, which we restate as follows. First, did the Board apply the proper legal standard in determining whether to grant the desired use variance modification? *See* Objectors' Br. at 15-28.[7] Second, if the Board did use the correct standard, did it err by concluding that Appellees were entitled to approval of the Second Application? *Id.* at 28-41. We address each question in turn.

With regard to the first issue,[8]

---

[6] "Our standard of review, where [a court of common pleas] takes no additional evidence, is limited to determining whether constitutional rights were violated, [whether] an error of law was committed[,] or whether necessary findings of fact were supported by substantial evidence of record." *SSEN, Inc. v. Borough Council of Borough of Eddystone*, 810 A.2d 200, 208 n.11 (Pa. Cmwlth. 2002). "By 'substantial evidence' we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983) (citations omitted).

[7] Objectors' remaining argument, which we do not reach, is that the Trial Court abused its discretion by declining to take additional evidence, modify the Board's decision by attaching additional conditions to the use variance modification, and/or remand to the Board so it could take additional evidence. *See* Objectors' Br. at 41-47.

[8] We assume for purposes of this appeal, but do not conclude, that the Board's May 24, 2019 decision modified the use variance it granted to the Burnses in 1999. We discern nothing in the evidentiary record indicating that such a modification actually occurred. In addition, none of the parties identify specifically how the Second Application's approval modified any of the conditions attached to the 1999 use variance. Furthermore, authorizing a completely different use than that allowed through a previously issued variance, as the Board did here, constitutes a wholesale change, *not* a modification of that variance.

Even so, it remains that Objectors appear to broadly insist that such a modification did, in fact, occur. *See* Objectors' Br. at 16-17 ("The parties and [the] Court below apparently agree on the applicable standard of review that applies to this case[,]" *i.e.*, the variance modification standard articulated in *German v. Zoning Bd. of Adjustment*, 41 A.3d 947 (Pa. Cmwlth. 2012).). Thus, the specific issue of whether the Second Application *actually* modified any of the 1999

**(Footnote continued on next page…)**

6

[t]he well-established case law of this Court provides:

> An owner [that] wishes to obtain a modification of a condition [attached to a previously granted variance] . . . can obtain relief if [the owner] establishes:
>
> (1) Either grounds for traditional variance or changed circumstances which render the condition inappropriate; and
>
> (2) Absence of injury to the public interest.

*German*, 41 A.3d at 950 (citations omitted) (quoting *Ford v. Zoning Hearing Bd. of Caernarvon Twp.*, 616 A.2d 1089, 1092 (Pa. Cmwlth. 1992)[.] . . . Thus, an owner seeking relief from a condition attached to an existing variance may decide whether to demonstrate changed circumstances or meet the traditional standard for granting variances. In either case, the owner must also show that the request to modify the condition is not contrary to the public interest. As we have explained, this standard "reflects a respect for the finality of an administrative body's initial analysis of a particular set of circumstances when it decides to grant a variance with conditions, but [it] also acknowledges that changes in circumstances sometimes make conditions no longer appropriate." *German*, 41 A.3d at 950.

. . . .

[In other words, a]n owner that does not show changed circumstances may still obtain modification of a variance condition by meeting the standard to obtain a new variance.

*S. Broad St. Neighborhood Ass'n v. Zoning Bd. of Adjustment*, 208 A.3d 539, 545-46 (Pa. Cmwlth. 2019) (citations and parenthetical omitted). Here, both the Board and Applicants insist that the Second Application was evaluated using the traditional variance test. *See* Board's Br. at 7; Applicants' Br. at 19-21. Therefore, the Board

---

conditions is not before us. Moreover, given that the Board reviewed the Second Application using the traditional variance test, as discussed *infra*, this issue would functionally be moot even if Objectors had raised it.

facially appears to have considered the Second Application in a legally proper manner.

This prompts us to move to the second question: did the Board *correctly apply* the traditional variance test. In this instance, the generally applicable standard for granting variances is set forth in the Township's Zoning Ordinance:

> The . . . Board shall hear requests for variances where it is alleged that the provisions of the Zoning Ordinance inflict unnecessary hardship upon the applicant. The Board may by rule prescribe the form of application and may require preliminary application to the Zoning Officer. The Board may grant a variance, provided that the following findings are made where relevant in a given case:
>
> > (a) That there are unique physical circumstances or conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions.
> >
> > (b) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the Zoning Ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
> >
> > (c) That such unnecessary hardship has not been created by the appellant.
> >
> > (d) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use by development of adjacent property, nor be detrimental to the public welfare.
> >
> > (e) That the variance will represent the minimum variance that will afford relief.

Zoning Ordinance § 195-97(5).[9]

We view this language through the lens of our well-established case law in this realm.

> A variance . . . is issued by a zoning hearing board [and] is not provided for in the zoning ordinance, but [rather] is permission to deviate from the ordinance in either the dimensions of the improvements made to the land or in the use of the land. A variance is the proper relief where an unnecessary hardship attends the property; a variance cannot provide relief where a hardship afflicts the property holder's desired use of the land and not the land itself. *Yeager v. Zoning Hearing Bd. of the City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001). Although zoning ordinances are to be liberally construed to allow for the broadest possible use of the land, the applicant seeking a variance bears a heavy burden. *See Beers ex rel. P/O/A Beers v. Zoning Hearing Bd. of Towamensing Twp.*, 933 A.2d 1067, 1069 (Pa. Cmwlth. 2007) (the letter of the ordinance cannot be disregarded under the pretext of pursuing the spirit); *Borough of Latrobe v. Paul B. Sweeney*, 331 A.2d 925, 927 (Pa. Cmwlth. 1975) (personal and economic considerations are not sufficient grounds upon which to base the grant of a variance). The reasons for granting a variance must be substantial, serious, and compelling. *Valley View* . . . , 462 A.2d [at] 640[.]

*Nowicki v. Zoning Hearing Bd. of Borough of Monaca*, 91 A.3d 287, 291 (Pa. Cmwlth. 2014). In short, "[a] variance, whether labeled dimensional or use, is appropriate 'only where the *property,* not the person, is subject to hardship[.]'" *Yeager*, 779 A.2d at 598 (quoting *Szmigiel v. Kranker*, 298 A.2d 629, 631 (Pa. Cmwlth. 1972)) (emphasis in original). Given this, the onus is on the applicant to firmly establish that "a substantial burden . . . attend[s] *all* [legally] compliant uses

---

[9] This language is substantially similar to that contained in Section 910.2(a) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2(a).

of the property, not just the particular use [that the applicant has chosen]." *Yeager*, 779 A.2d at 598 (emphasis in original).

> A variance should not be granted simply because such a grant would permit the owner to obtain a greater profit from the use of the property. *A.R.E. Lehigh Valley Partners v. Zoning Hearing* [*Bd.*] *of Upper Macungie* [*Twp.*], . . . 590 A.2d 842 ([Pa.Cmwlth.] 1991). Economic hardship short of rendering the property valueless does not justify the grant of a variance. *BP Oil, Inc. v. Zoning Hearing* [*Bd.*] *of the Borough of Brookhaven*, . . . 389 A.2d 1220 ([Pa.Cmwlth.] 1978).

*Com. By & Through Dep't of Gen. Servs. v. Zoning Hearing Bd. of Susquehanna Twp.*, 677 A.2d 853, 855-56 (Pa. Cmwlth. 1996). "Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied[.]" *Soc'y Hill Civic Ass'n v. Philadelphia Zoning Bd. of Adjustment*, 42 A.3d 1178, 1187 (Pa. Cmwlth. 2012). With regard to use variances in particular, they "involve[] a request to use property in a manner that is wholly outside zoning regulations." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 520 (Pa. Cmwlth. 2014). At its core, a use variance is thus narrowly tailored relief from strictures imposed by a zoning ordinance that, in practice, render a property unusable. What a use variance *cannot* be, however, is a mechanism to afford a landowner wide latitude to use their property as they see fit, regardless of what they are allowed under the terms of the applicable zoning ordinance. Furthermore, of particular import here is the requirement that

> [c]ourts and zoning boards must . . . recognize the legal effect of an existing variance when considering an application for a new variance.[] Thus, . . . when a court applies the traditional standard for variance relief to a request to modify or remove a condition attached to an existing variance, the court must consider the use of the

> property as permitted by the current variance and associated conditions to be the legally permitted use of the property from which the owner is seeking a new variance.

*S. Broad St.*, 208 A.3d at 546-47 (footnote omitted).

In this instance, the record shows that Applicants' efforts to obtain a use variance modification were based not upon some sort of unnecessary hardship inherent to the Large Lot and the Small Lot, but rather upon their desire to maximize both the market value and the development potential of those parcels. During the course of his testimony before the Board, Mr. Burns made clear that the Large Lot and the Small Lot constituted his "life savings" and that selling them was necessitated by his decision to retire. Board Hearing Tr., 4/10/19, at 38-39. According to Mr. Burns, "You work all your life to save up so much money or whatever. I kept putting [the money] into the business, kept it going. Now, it comes time to have the money and retire and take it easy." *Id.* Additionally, when Mr. Burns was questioned about whether he had received any other offers for his properties, he replied, "I had lots of offers, but they were ridiculous offers. I mean, like maybe $100,000.00 or $200,000.00. I don't think it [sic] even got to me." *Id.* at 47. Other than this lay characterization, though, Applicants presented no evidence that these offers were unreasonable in light of the uses which were already authorized, either through the Zoning Ordinance or the 1999 use variance, for the Large Lot and the Small Lot.

We also note that the Burnses specifically applied for a use variance in 1999 that would allow them to use the Property as an "[e]xtension of non[]conforming use of construction, office, storage building and material storage of adjoining property." R.R. at R114. To interpret this 1999 application as seeking broad dispensation to allow the Property to be used in the future for a purpose that, at the time, had never been proposed and thus was utterly unknowable to both the Burnses and the ZHB,

11

defies logic. Moreover, construing the ZHB's decision to grant the 1999 application as being so open-ended as to allow for a tractor dealership and service center in 2019 would effectively create a massive loophole in the case law governing the issuance of use variances; were that reasoning to carry the day, zoning ordinances would no longer control land use to the same degree as they do now, because use variances would offer a ready-made avenue for hollowing out zoning ordinances' land use limitations over time.

Furthermore, the record indisputably shows Mr. Burns managed to successfully operate his business for years, both before and after he obtained the 1999 use variance. By contrast, there is *no evidence* that a new owner could not pick up Mr. Burns' mantle and continue on with running the now nearly four-decade-old paving company; indeed, though Mr. Flannery discussed at length his interest in establishing a tractor dealership and service center, he did not explain how dispensation to do so was necessitated by the intrinsic characteristics of the at-issue parcels. As such, while Applicants' individual and collective goals and desires may be understandable on a personal level, it does not follow that they were consequently entitled to have the Board modify the 1999 use variance. Accordingly, the Board erred by granting the Second Application and the Trial Court erred by affirming the Board.

### III. Conclusion

In light of the foregoing analysis, we reverse the Trial Court's October 8, 2020 order.

_____
ELLEN CEISLER, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marla McCloskey : 
 : 
   v. : No. 1093 C.D. 2020
 : 
The Zoning Hearing Board of the : 
Township of Rostraver, Edward J. : 
Burns, J&J Real Estate, L.P. and : 
James Flannery and Kelly : 
McCloskey, Tim Kuma, Jackie : 
Tonini, Ken Koury and Charlotte : 
Kuma : 
 : 
Appeal of: Marla McCloskey, Kelly : 
McCloskey, Tim Kuma, Jackie : 
Tonini, Ken Koury and Charlotte : 
Kuma : 

# **O R D E R**

AND NOW, this 9th day of August, 2021, the Court of Common Pleas of Westmoreland County's October 8, 2020 order is hereby REVERSED.

_____
ELLEN CEISLER, Judge